RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0071p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

             *v.*

BARBARA J. WALLACE,
             *Defendant-Appellant.*

No. 07-2230

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 04-20049—Thomas L. Ludington, District Judge.

Argued: November 17, 2009

Decided and Filed: March 16, 2010

Before: MERRITT, CLAY, and McKEAGUE, Circuit Judges.

—————————————

## COUNSEL

**ARGUED:** Eric E. Proschek, LAW OFFICE, Bay City, Michigan, for Appellant. Janet L. Parker, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee. **ON BRIEF:** Eric E. Proschek, LAW OFFICE, Bay City, Michigan, for Appellant. Janet L. Parker, ASSISTANT UNITED STATES ATTORNEY, Bay City, Michigan, for Appellee.

CLAY, J., delivered the opinion of the court, in which MERRITT, J., joined, and also filed a separate concurring opinion (p. 19). McKEAGUE, J. (pp. 20-25), delivered a separate opinion concurring in part and dissenting in part.

—————————————

## OPINION

—————————————

CLAY, Circuit Judge. Defendant Barbara Wallace appeals her conviction and sentence following her conviction for perjury in violation of 18 U.S.C. § 1621, conspiracy to possess with intent to distribute oxycodone (OxyContin) in violation of 21 U.S.C. § 841(a)(1), and use of a communication facility to facilitate a drug crime in violation of 21

1

U.S.C. § 843(b).   She appeals challenging both her conviction and the procedural reasonableness of her sentence.   For the following reasons, Wallace's conviction is **AFFIRMED,** but her sentence is **VACATED**, and the case is **REMANDED** for re-sentencing.

## BACKGROUND

Wallace has been tried twice on the drug charges.  A first trial ended in mistrial when the jury could not reach a unanimous verdict.  A new indictment was filed adding two counts of perjury based on Wallace's testimony at the first trial.  The perjury and drug charges were tried together at a second trial where Wallace was found guilty of all charges.  She was given concurrent sentences, the longest of which was seventy-eight months.

Wallace came to the attention of authorities following an investigation that began in Saginaw, Michigan.  Federal authorities were suspicious of a series of packages sent to a "Kim Smith" in Saginaw from addresses in California that did not exist.  A package was intercepted in October 2004, and a drug detection dog picked the package out of a package "line up."  The postal inspector opened the package and found sixty tablets of OxyContin. In connection with the delivery of this package, a search warrant was executed which revealed that the intended recipient was Wardell Amos.  Upon further investigation, it was determined that the addressed recipient, "Kim Smith," did not exist.  Amos agreed to cooperate with the government and placed a phone call to Wallace's home.

During the investigation, Drug Enforcement Agency ("DEA") agents found copies of six Express Mail packages of similar weight sent from California to "Kim Smith."  One of the packages identified on the return address a Jean Wallace of 435 East 84th Place, Los Angeles, California.  Wallace's mother's address was 433 East 84th Place in Los Angeles. The defendant's middle name is Jean.  Security cameras at the post office in Los Angeles showed Wallace and her boyfriend Dameon White-Baber entering the post office and showed Wallace filling out the mailing label.  The package included a doll that Wallace later claimed she was sending to a relative of White-Baber.  The OxyContin was inside the packaging for the doll.  The parties stipulated that Wallace completed the Express Mail label for packages mailed on May 28, 2004 and October 20, 2004, while White-Baber completed

the labels for other packages sent to Amos' address. Wallace testified at her first trial that White-Baber's family referred to her as "Jean."

Additionally, on August 26, 2004, Wallace and White-Baber went to a Western Union Office to cash a five hundred dollar money order in Wallace's name. At her initial trial, Wallace testified that she did not end up with any of the cash. At the second trial, the Western Union clerk testified that office policy would have been to hand the money to Wallace, since the wire was in her name, and she signed for it. At the second trial, Wallace clarified that she did not remember whether the money was initially handed to her but insisted that White-Baber ended up with it eventually.

Wallace was charged on August 24, 2005 with a four-count indictment for conspiracy to possess with intent to distribute and to distribute OxyContin in violation of 21 U.S.C. § 841(a)(1) and misuse of a communications facility in connection with a drug offense in violation of 21 U.S.C. § 843(b). Wallace was added to a previous indictment that had included Wardell Amos and Dameon White-Baber. A Fifth Superceding Indictment removed Amos from the indictment, following his plea, and added a second count against Wallace for use of a communication facility to commit a drug crime in violation of 21 U.S.C. § 843(b).

The first trial commenced on December 5, 2006 and continued until December 13, 2006, when a mistrial was declared because the jury could not reach an unanimous verdict. On February 28, 2007, a Sixth Superceding Indictment was issued only against Wallace. It included the five drug charges from the previous indictment and added two counts of perjury, in violation of 18 U.S.C. § 1621, based on Wallace's testimony at her trial. At a status conference on April 5, 2007 before the district judge, Wallace and her counsel specifically stated that they had discussed making a motion to sever the perjury and drug charges. Wallace stated that she understood that she could ask to separate the perjury and drug charges, but she wanted to try all counts together. The second trial began on May 15, 2007, and the drug and perjury charges were tried together. Defendant filed a motion for acquittal pursuant to Rule 29 of Federal Rules of Criminal Procedure that was denied. The jury convicted her of all counts. Wallace was sentenced to seventy-eight months in prison. She timely filed an appeal of both the conviction and the sentence.

## DISCUSSION

### I.     Joinder of Drug and Perjury Charges.

Defendant's first argument challenging her conviction is that the joinder of the drug and perjury charges was improper. It is unclear from Defendant's briefing whether she challenges the indictment itself as improper or the actual joinder at trial, nor is it clear that the analysis would be different based on which of those two things Wallace was actually challenging. No matter what she is challenging, the verdict must stand because Defendant waived her right to separate trials on the drug and perjury counts and has suffered no constitutional harm as a result of all charges being tried together in a single trial. Defendant admits that she did not object to the joinder of the drug and perjury charges pursuant to Federal Rule of Criminal Procedure 14. Under Federal Rule of Criminal Procedure 12(b)(3), a Rule 14 motion to sever charges must be raised before trial. Under Rule 12(e), any Rule 12(b)(3) objection is waived if not made in the allotted time prior to trial. A court may grant relief from the waiver "for good cause." Fed. R. Crim. P. 12(e) ("A party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides. For good cause, the court may grant relief from the waiver.").

Defendant argues that her failure to object to the allegedly prejudicial joinder means that the district court's decision should be considered subject to plain error review. For support, she cites *United States v. Abboud*, 438 F.3d 554 (6th Cir. 2006). *Abboud* is silent on the standard of review for these claims. That case dealt with a defendant's challenge to an indictment that charged as separate counts each check in a check kiting scheme. The defendant had not made a proper objection, and the Court analyzed whether the argument was therefore waived. The principal relevant holding is that even if a defendant fails to object to the procedural violation of an improper indictment, she can still make substantive objections, such as a double jeopardy claim. In *Abboud*, this Court found that the defendant had failed to make any substantive objections, and that even if he had, his claim of multiplicity in the indictment, based on separate counts for each check, lacked merit. Certainly "plain error" is the general rule for appellate review of a district court decision

where a party failed to object, but in this case, Wallace's appeal would fail under any standard.

While *Abboud* provides the framework for how to analyze a substantive challenge to the improper joinder of counts for trial, Wallace fails to present her arguments in that framework. Wallace's primary challenge is to the joinder of the perjury and drug charges, but she goes beyond the alleged defectiveness of the indictment to argue that the government improperly shifted the burden and took away Wallace's Fifth Amendment right to silence on the drug charges. To begin, Wallace makes a broad challenge to the joinder of both the perjury and drug counts. It is uncontested that Defendant waived any right she might have had to contest the joinder of these charges for trial. In fact, Defendant stated affirmatively, on the record, that she preferred to have just one trial. (J.A. 465-66). The clear meaning of Rule 12(b)(3) indicates that Wallace waived the right to make this argument before this Court. *See Abboud*, 438 F.3d at 567 (finding Defendant who did not make a Rule 12 objection could not challenge the indictment and could only challenge independent "substantive" errors); *see also*, *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991) (finding a severance argument waived when it was not renewed during trial).

Wallace never explains the basis for her argument that she has not waived her right to contest this issue, nor does she argue that this Court should grant relief from the waiver for "good cause." The cases she cites include that of a defendant who properly moved under Rule 14 to sever the allegedly unrelated charges, *United States v. Graham*, 275 F.3d 490, 511 (6th Cir. 2001), and that of a defendant who moved to create separate trials for multiple defendants, *United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995). These cases dealing with the deferential standard to be accorded a district court's decision on a Rule 14 motion have no relevance in this case, in which no Rule 14 motion was ever made, and in which the Defendant specifically stated on the record that she desired only one trial. Defendant's explicit waiver precludes this Court from addressing any claim based solely on the joinder of the drug and perjury counts.[1]

---

[1] Defendant makes no argument, and there is no support in the record, that would suggest that the waiver was not knowing and voluntary. The waiver occurred at an on-the-record pre-trial conference. At that conference, Wallace's attorney and Wallace agreed that they had discussed having two trials or one trial, that Wallace had the right to request separate trials, and that her waiver meant that the perjury and drug charges would be tried together. Wallace specifically stated that her choice was to have "one trial." (J.A. 465-66). Without knowing the context of previous communications between Wallace and her

Since Wallace waived her right to challenge the improper joinder on its own terms, the "question then becomes whether Defendant[] made any substantive objections" to the allegedly improper joinder. *Abboud*, 438 F.3d at 567. Wallace sets forth no argument in these terms, and it is likely that she has waived her right to object. *Id*. (finding waiver where defendant never claimed violation of a substantive right). Wallace's brief can be read favorably to raise several substantive points. She argues the improper indictment allowed the prosecutor to impermissibly shift the burden to Wallace and that the indictment denied Wallace her Fifth Amendment right to remain silent regarding the drug charges.[2]

Wallace appears to contend that the burden of proof was improperly shifted in a series of statements made by the prosecutor. The statements about which she complains do not appear to be problematic. For instance, Wallace complains that the prosecutor argued that Wallace "expects you to believe" the testimony at the first trial and that "she just did not know and did not care." It is unclear what burden this is allegedly shifting. Prosecutors are allowed to point out to the jury what evidence and testimony support their case so long as they do not exceed the bounds of propriety. It is not shifting the burden of proof to state that "there is nothing to substantiate" Wallace's testimony. These statements are merely comments on the evidence, and Wallace fails to offer any case citations in support of her argument.

Her Fifth Amendment challenge is equally flawed. Wallace argues that she lost her Fifth Amendment right to remain silent regarding the drug charges as a result of the district court's joinder of the drug and perjury charges. She chose to have both charges tried in one trial, and she chose to testify at the second trial. The government did not force her to request to try the charges in a single trial or to testify at the second trial. Because a person is entitled to waive a constitutional right as a matter of trial strategy, *see Watkins v. Kassulke*, 90 F.3d 138, 142-43 (6th Cir. 1996), Wallace cannot now complain about any harm she perceives

---

attorney, we express no opinion on whether he provided ineffective assistance on this issue, but on the record before us, the waiver appears to be knowing and voluntary.

[2] She also argues that "other unfairness" occurred during the trial "which will not be the subject of separate issues in this case but should be pointed out to the court." (Def. Br. 15). She then mentions the government's alleged accusation that Defendant's counsel tried to suborn perjury and a Federal Rule of Evidence 404(B) issue about Wallace's previous use of an alias. Because Defendant specifically asserts that these are not issues for this Court, we decline to consider them.

to have resulted from her explicit waiver of the right to move for separate trials. Wallace's Fifth Amendment claim is different from the substantive rights at issue in the cases discussed in *Abboud*. For instance, in *United States v. Rosenbarger*, 536 F.2d 715 (6th Cir. 1976), the defendant failed to lodge a multiplicity objection at trial, but he was still entitled to object to multiplicitous sentences imposed in violation of the Double Jeopardy Clause. *See also*, *United States v. Adesida*, 129 F.3d 846, 849 (6th Cir. 1997) (holding that a failure to object to a duplicitous indictment did not affect defendant's right to challenge the possibility of a less than unanimous verdict for each offense). In the instant case, Wallace had a Fifth Amendment right to remain silent, but she chose not to exercise it. For strategy reasons, she may have decided that having all the elements tried together was a better decision. In any event, she cannot escape the consequences of that decision because it resulted in her testifying about the drug transactions in the context of defending herself against perjury charges.

## II.    Motions for Acquittal on the Perjury Counts

Wallace also appeals the denial of her Rule 29 motion for acquittal on the perjury counts. Because Wilson made such a motion at the close of all proofs, we review the district court's decision to deny Wilson's motion *de novo*. *United States v. Budd*, 496 F.3d 517, 530 (6th Cir. 2007). In reviewing the sufficiency of the evidence, the relevant inquiry is "'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *United States v. Meyer*, 359 F.2d 820, 826 (6th Cir. 2004)); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The first perjury count dealt with Wallace's testimony from the first trial that White-Baber's family referred to her by the name Jean. This testimony was relevant because Wallace used the name "Jean Wallace" on the return mailing slip of the package she mailed that contained OxyContin pills. The mailing address on that label was a variant of her mother's address. The government contends that Wallace used her middle name and the fake address to reduce her risk of being connected to the drugs. On appeal, Wallace challenges both whether sufficient evidence supports a finding that the statement was false and whether the statement was "material."

In this case, the government came forward with sufficient evidence that would allow a reasonable jury to find beyond a reasonable doubt that Wallace's statement in the first trial was false. *Budd*, 490 F.3d at 530. For instance, the government points to evidence that White-Baber's father and aunt called Wallace "Barbara" and not "Jean." White-Baber's foster mother also referred to her as Barbara in her testimony. Wardell Amos, who Wallace believed to be White-Baber's aunt, not only called Wallace "Barbara" during testimony but also called her "Barbara" when she phoned Wallace at the behest of the DEA on the day of Amos' arrest.

Wallace provided no evidence, other than her own testimony, that anybody ever called her Jean, and Wallace stated her full name as "Barbara Wallace." She also did not include "Jean Wallace" on her application for federal employment when asked to list any other names she had ever used. Wallace's argument on appeal is that no witness specifically testified that they had heard White-Baber's family call her any particular name. Nonetheless, a number of White-Baber's relatives referred to her as "Barbara," even if they were not specifically addressing the question.

Furthermore, the facts surrounding the two address labels filled out by Wallace support a finding that "Jean Wallace" was not being used as her real name. On the package where she listed her name as "Jean," she did not use a real address. This undermines her claim that she was using her own name because she thought the package was a gift for a loved one. Wallace filled out a later slip that included a variation of White-Baber's name and also a slightly altered address. Based on this evidence, a reasonable jury could find beyond a reasonable doubt that Wallace was not called "Jean Wallace."

Wallace argues in addition that the alleged misstatement was not material. "[A] false declaration satisfies the materiality requirement if a truthful statement might have assisted or influenced the . . . jury in its investigation." *United States v. Swift*, 809 F.2d 320, 324 (6th Cir. 1987). Had Wallace admitted that she did not use the name "Jean Wallace," the jury would have understood that Wallace was mailing a package with an intentionally false name. Wallace asserted that the package was a gift to a relative of White-Baber's, so no reasonable explanation exists to explain why she would use a fake name. The use of a false name and address is certainly relevant to the jury's central inquiry at the first trial concerning whether

Wallace was a knowing member of the drug conspiracy. The use of a name she did not normally go by undermines her claim that she thought she was innocently mailing a doll.

The second perjury charge deals with Wallace's statement at the first trial that while she signed for $500 from Western Union, she did not know how much money it was, and the money was actually handed to White-Baber. Wallace does not challenge the sufficiency of the evidence but alleges that the false statement was not material, arguing that: "It mattered not one bit to the issues in December of 2006 when she was testifying about standing right next to White-Baber in front of the clerk at Western Union and after having filled out some documents for the purpose of receiving money whether that money was handed to her or to White-Baber." (Def. Br. 22). This materiality argument must fail because one of the counts against Wallace was using Western Union to receive the proceeds of drug sales. Whether she intentionally cashed and received money from Western Union or unknowingly aided White-Baber is certainly relevant to the charge that she used a communications facility to receive funds from a drug transaction.[3]

### III.    Procedural Reasonableness of the Sentence

"[C]ourts of appeals must review all sentences . . . under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Where a party has failed to object to a procedural defect, we review claims of procedural unreasonableness for plain error. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (*en banc*). The district judge, at the behest of the government in reference to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), inquired as to whether Wallace had "any specific objections that you would make to the sentence imposed." Wallace did not respond with any objections, so her appeal is subject to plain error review. To show plain error, a defendant must show (1) error (2) that

---

[3]Wallace also argues that Count VII was ambiguous, making it impossible to know exactly what alleged perjury she committed. Wallace states that when the perjury count regarding the Western Union statements was incorporated into the jury instructions, it simply said she testified falsely "regarding the receipt of the Western Union Wire Transfer Money Order on December 8, 2006." She then refers to the fact that the jury instructions do not state what date the perjury allegedly happened and the fact that they did not reference cash when the whole dispute was about the receipt of $500 in cash. The government in closing argument apparently never specifically referred to the exact false statements that Wallace allegedly made. This entire argument is without merit. Wallace cites no case law for support, and the indictment, which was given to the jury, is clear about which testimony at the first trial allegedly constituted perjury. Further, the jury instructions clearly refer to the Western Union transaction, and the jury unquestionably understood what allegedly false statements were at issue.

was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings. *Vonner,* 516 F.3d at 386.

Wallace challenges the procedural reasonableness of her sentence based on the district court's failure to consider her argument that she received a longer sentence than White-Baber, even though he played a much larger part in the conspiracy. The government responds with several factors that arguably explain the sentencing disparity but can point to no part of the sentencing transcript that shows that the district court ever considered these issues. The government first notes the fact that White-Baber pled guilty and received the corresponding reduction in his sentence. Between the three level drop for acceptance of responsibility and Wallace's two level increase for obstruction of justice, there is a five level swing. Second, White-Baber has sickle-cell anemia, which all parties agree led the district judge in that case to vary downward from the sentencing guidelines. The problem with the government's argument is that these justifications, while offered by the government at the sentencing hearing, were never adopted or even acknowledged by the district judge.

The district judge's discussion of the 3553(a) factors was very abbreviated. He stated only that he was sentencing pursuant to "careful consideration of the factors that we are also to give consideration to under Title 18 of the United States Code Section 3553(a)." In *United States v. Chandler*, 419 F.3d 484, 488 (6th Cir. 2005), this Court noted that "there is no requirement that the district court . . . engage in a ritualistic incantation of the § 3553(a) factors [but that] the district court's sentence should nonetheless reflect the considerations listed in § 3553(a)." (citations and quotations omitted). The district judge's sentencing colloquy noted that Wallace, through her profession, was providing service to the community. It noted that her association with White-Baber was a mistake that has led to the "tragedy" that is her conviction. The judge noted that Wallace would have a "significant sentence to serve" but also expressed the confidence that she still had "a full life to live and a contribution to make to your children's lives." (J.A. 826-27.)

Nowhere in the sentencing hearing did the district judge discuss why sentencing Wallace to twice as long as White-Baber was appropriate. During the sentencing hearing, Wallace's counsel argued as follows:

> At this point this Court is in the unique perspective that I think it's clear that Damien White-Baber was the main actor of all this. It was his OxyContin. Obviously most of the money orders were coming to Damien White-Baber. It was his transactions that – that occurred over and over again on the shipping of this and everything. It all goes – Damien White Baber is 100 percent involved in everything, and that's why he pled guilty to everything he was charged with.

> So now Barbara Wallace, who was involved with preparing two packages or putting a mailing label on two packages and signing for one money order, is now facing sentencing guidelines that are double or triple what Mr. Baber was actually sentenced to.

> I would ask the Court – we recognize what the guidelines are, but we ask the Court to use its wisdom in sentencing Barbara to – in light of the ones – Mr. Baber received a lesser sentence.

(J.A. 820). The district judge was completely non-responsive to this argument. His only mention of White-Baber in issuing a sentence was to acknowledge that Wallace "made one important error, her association with Damien, and she's here today as a result of that, and it's a tragedy." (J.A. 826).

In considering a sentencing judge's obligation to address sentencing disparities under § 3553(a)(6), this Court has been clear that, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," does not apply to co-conspirators. 18 U.S.C. § 3553(a)(6). "[T]his factor concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct – not disparities between co[conspirators]." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). A district judge is not required to consider the disparity between the sentences of co-defendants. "A district judge, however, *may* exercise his or her discretion and determine a defendant's sentence in light of a co-defendant's sentence." *United States v. Simmons*, 501 F.3d 620, 624 (6th Cir. 2007). In the instant case, Wallace is challenging the procedural reasonableness of her sentence based on the district court's failure to consider non-frivolous arguments for a lower sentence. Whether a district judge decides to consider the argument is discretionary, but the argument is certainly non-frivolous. *See, e.g.*, *United States v. Presley*, 547 F.3d 625, 630 (6th Cir. 2008) (noting that the district court considered the "need to avoid an unwarranted disparity" between the defendant's sentence and a co-defendant's sentence as "the most important consideration").

"When a defendant raises a particular[, nonfrivolous] argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (quoting *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007)).  On this record, the district judge's failure to properly address this issue is apparent because we are unable to answer the simple question of  why the district judge decided to impose a sentence more than twice as long as White-Baber's.  The disparity in the proposed sentences was the central point of Wallace's argument for a lower sentence, but we have no way of knowing how or to what extent the disparity argument influenced the district judge's eventual sentence.

The government provided facially legitimate reasons why the disparity is appropriate, namely Wallace's obstruction of justice, White-Baber's acceptance of responsibility, and his sickle cell anemia.  Nonetheless, this Court cannot determine why the district court thought it was appropriate that White-Baber and Wallace should receive such disparate sentences.  "Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments." *Rita v. United States*, 551 U.S. 338, 357 (2007).  In *Rita*, unlike this case, the "record makes clear that the sentencing judge listened to each argument." *Id*. at 358.  The district judge in this case did not make even a cursory mention of the disparity in sentences between White-Baber and Wallace.

The question that remains is whether this error is sufficient to satisfy the stringent standard of plain error review.  This Court's opinion in *Vonner* shows that plain error review should be extremely deferential to the sentencing judge.  Nonetheless, even under this more deferential standard, this case must be remanded for re-sentencing.  It is well-settled that a district judge need not "give the reasons for rejecting any and all arguments by the parties for alternative sentences," nor must she give "the specific reason" for a within-guidelines sentence. *Vonner,* 516 F.3d at 387.  In *Vonner*, however, the majority acknowledged that the crucial question is "whether 'the record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *Id*. (quoting *Rita v. United States*, 551 U.S. at 356).  In *Vonner*, the district judge was extremely brief in

his analysis, but he did, albeit in a cursory manner, consider or show an understanding of all of the defendant's arguments for leniency. The district court in this case was silent on the sentencing disparity issue and did not even specifically mention any of the § 3553(a) factors.

It is uncontested that Wallace was not the mastermind of the conspiracy and that White-Baber was more involved. While the government offered a reasonable explanation for the disparity in sentences, the district court should not be allowed to delegate its obligation to "state in open court the reasons for its imposition of the particular sentence" to the prosecutor and the defendant. 18 U.S.C. § 3553(c). A district judge "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

> From every perspective, it is preferable for district courts to explicitly address every nonfrivolous argument raised by a defendant. Expressly articulating the grounds for rejecting the particular claims raised by a defendant, at least with respect to a defendant's nonfrivolous arguments, promotes several critical goals: (1) it provides the defendant with a clear understanding of the basis for his or her sentence; (2) it allows the public to understand the rationale underlying the chosen sentence; and (3) it helps this Court avoid the difficulties of parsing the sentencing transcript when determining whether the district court in fact considered the defendant's arguments. In fact, if district courts fully complied with this obligation, many frivolous appeals and clarification remands could be avoided.

*United States v. Petrus*, 588 F.3d 347, 353 (6th Cir. 2009) (citation and quotation omitted).

*Rita* and *Vonner* both emphasize that the record must "make[] clear that the sentencing judge considered the evidence and arguments." *Vonner*, 516 F.3d at 387 (quoting *Rita*, 551 U.S. at 359). On the transcript of the sentencing hearing, we simply cannot determine whether the district judge considered the disparity between Wallace's and White-Baber's sentences.[4] This failure to even acknowledge Defendant's argument mandates remand in this case. *See Petrus*, 588 F.3d at 355 (affirming sentence where "the record discloses that the district court considered and rejected the Defendant's position"). Wallace has a right to have the sentencing judge consider her arguments for a lower sentence. The

---

[4]The dissent's contention that "it is clear" that the district court considered and intentionally rejected Wallace's argument is unsupportable. The district court never remotely acknowledged the argument, and the dissent is left to rely on the fact that the argument was "conceptually straightforward."

disparity between her sentence and White-Baber's is a valid argument that requires the sentencing judge to consider why the less-involved party should be sentenced to twice as long a period of incarceration.  The error was, therefore, plain, and the case should be remanded for the district judge to consider Wallace's argument about the disparity between her sentence and White-Baber's.

We acknowledge that this issue is frequently litigated, and we have often rejected similar challenges.  A general sense of deference to district courts on sentencing leads us to affirm sentences where the district judge has failed to fully explain the reason for the sentence.  *See, e.g., Petrus*, 588 F.3d at 356 (affirming sentence where judge addressed arguments "in a bare-bone fashion."); *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009) (affirming sentence with little comment from the district court where issue is "conceptually straightforward such that we may assume, even absent express analysis by the judge, that the sentence reflects consideration of the argument," and the argument was purely legal, not factual) (citation and quotation omitted); *United States v. Duane*, 533 F.3d 441, 453 (6th Cir 2008) (affirming sentence where district court did not respond to a nonfrivolous argument because "the district court imposed a within-Guidelines sentence, addressed the factors it found relevant, and addressed the majority of [Defendant's] arguments"); *United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009) (affirming sentence where the district court did not specifically respond to Defendant's arguments because it stated "that it had accounted for the 'nature and circumstances' of the offense and the history and the characteristics of [Defendant]); *but see United States v. Blackie*, 548 F.3d 395, 401 (6th Cir. 2008) (finding the district court "*plainly* erred when it did not refer to the applicable Guidelines range and failed to provide its specific reasons for an upward departure or variance at the time of sentencing); *United States v. Barahona-Montenegro*, 565 F.3d 980, 984 (6th Cir. 2009) (remanding for resentencing where the "district court's oral sentence fail[ed] to calculate clearly the appropriate Guidelines range, but also [did not] adequately explain the chosen sentence"); *United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007) (remanding for resentencing on review for reasonableness where Court was "unsure as to whether the district court adequately considered and rejected [Defendant's] arguments regarding proper application of the § 3553(a) factors or whether it misconstrued, ignored, or forgot [Defendant's] arguments); *United States v. Johnson*, 488 F.3d 690, 700 (6th Cir.

2007) (remanding when Court was "unable to point to anything in the record to confirm" the Court's view that district court understood its discretion and the need to consider the § 3553(a) factors); *United States v. Howell*, No. 06-4306, 2009 WL 3765508 (6th Cir. Nov. 12, 2009) (finding plain error based on the district court's failure to explain its sentence in part because the district court's explanation left the Court unsure why co-defendants received substantially different sentences).

These cases are all binding precedent on this Court. None of them, nor any other case we can find, indicates that this Court should affirm a sentence when no part of the record makes clear that the district judge even understood Defendant's argument. Here, Wallace's primary argument for a lesser sentence was the disparity between her sentence and White-Baber's. This argument was assuredly non-frivolous. The government can only point to issues it raised itself to explain the discrepancy, and nothing the trial judge said in any way responds to Wallace's argument.

Other than the district judge's presence in the courtroom, the entire sentencing transcript fails to make clear whether the district judge even considered the argument, and "our case law and the Federal Rules of Criminal Procedure indicate that, as a procedural matter, the district judge must generally speak to arguments that are clearly presented and in dispute." *Simmons*, 587 F.3d at 361. *See also Petrus*, 588 F.3d at 356 (acknowledging that the district court "addressed every position advanced by the Defendant"); *Duane*, 533 F.3d at 451-52 (acknowledging *Rita's* instruction that "a sentencing court should 'set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority'") (quoting, *Rita*, 551 U.S. at 356 ); *Lapsins*, 570 F.3d at 774 (noting that "the record reveals that the district judge considered [Defendant's] arguments and evidence in support of a downward variance").

Based on this record, we simply cannot tell whether the district court considered Wallace's primary argument for a lesser sentence. The argument was Wallace's main reason for a lower sentence and was clearly made in terms of requesting a reduced sentence. The district judge's failure to even so much as acknowledge the argument constitutes an error that was obvious or clear, the first two prongs of plain error review. We explain below how the

dissent misses its mark with its unfounded contention that the district court's error did not affect Defendant's substantial rights.

To show "plain error," Wallace needs to also demonstrate that the error "affected defendant's substantial rights" and that it "affected the fairness, integrity, or public reputation of the judicial proceedings." *Vonner,* 516 F.3d at 386. In *Blackie*, the district court had issued a sentence without calculating the guidelines range and had given a sentence outside the guidelines range without providing specific reasons. The Court determined that these procedural errors implicated a defendant's right to meaningful appellate review because the requirement that the district court explain its sentence in § 3553(c), "facilitates such a review by requiring the district court to state its specific reasons for imposing a particular sentence." *Blackie*, 548 F.3d at 402. The Court in *Blackie* held that a violation of § 3553(c)(2), which deals with sentences outside the guidelines, affected a defendant's substantial rights. The logic applies with equal force to claims under § 3553(c)(1), and the other circuits that the *Blackie* court relied on had made no differentiation between the subparts of § 3553(c). *See United States v. Lewis*, 424 F.3d 239, 247 (2d. Cir. 2005) (holding that "Section 3553(c) bestows on defendants the right to argue more effectively that . . . a sentence is 'reasonable.' This right seems to us clearly to be 'substantial.'"); *In re Sealed Case*, 527 F.3d 188, 193 (D.C. Cir. 2008) (following the Second Circuit in holding that "failure to provide a statement of reasons as required by § 3553(c) is plain error, even when the length of the resulting sentence would otherwise be reasonable") (citation and quotation omitted).

Therefore, we follow the logic of *Blackie* and find that § 3553(c) generally implicates a "substantial right." The right at issue is the right to meaningful appellate review. That right is equally substantial for someone who is sentenced to either a guidelines sentence or an above-guidelines sentence. In *Rita*, the Supreme Court specifically noted that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation." 551 U.S. at 356. That language expressly deals with whether a judge has complied with § 3553(c).[5] The requirements of satisfying the

---

[5]The dissent appears to miss this distinction, quoting at length from *Vonner's* discussion of this section of the *Rita* opinion in arguing that Wallace failed to demonstrate that the error implicated a substantial right. *Vonner*, however, never explicitly addresses the two prongs of the plain error review that the dissent argues Wallace failed to satisfy, and it is apparent that *Vonner* found the district court's

commands of § 3553(c) are what separates a sentence within the guidelines range and one outside the guidelines range. In this case, under the most permissive reading of § 3553(c), the district judge failed to satisfy those requirements. The substantial right to meaningful appellate review is identical under both § 3553(c)(1) and § 3553(c)(2). Although at least two other circuits have rejected the approach in *Blackie*, *see e.g., United States v. Whitelaw*, 580 F.3d 256 (5th Cir. 2009); *United States v. Mendoza*, 543 F.3d 1186 (10th Cir. 2008), *Blackie* is nonetheless binding on our Court, and no circuit of which we are aware has created a distinction between §3553(c)(1) and §3553(c)(2).**6**

*Blackie* also compels a finding that failure to comply with § 3553(c) also affects the "fairness, integrity, or public reputation of judicial proceedings." In *Blackie*, the Court noted that compliance with § 3553(c) is "important not only for the defendant, but also for the public 'to learn why the defendant received a particular sentence.'" 548 F.3d at 403 (quoting *In re Sealed Case*, 527 F.3d at 191). As stated by the Supreme Court, compliance with § 3553(c) "reflects sound judicial practice . . . Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." *Rita*, 551 U.S. at 356. Therefore, the district court's failure to comply with § 3553(c) affected the "fairness, integrity, or public reputation of judicial proceedings."

If we adopted the dissent's approach and found Wallace failed to meet the third and fourth prong of plain error review, we would begin to reduce the § 3553(c) requirements almost to irrelevancy with respect to within guidelines sentences. In this post-*Booker* world, such a result would be highly problematic. The guidelines are not mandatory, and the range within the guidelines themselves provides ample room for judicial discretion that, when exercised, should be explained to the defendant. In addition, to effectively immunize § 3553(c)(1) errors from appellate review would provide even more incentive to district

---

abbreviated explanation was not a clear error, the second prong of plain error review.

**6**In *Blackie*, the Court specifically avoided finding that failure to comply with § 3553(c)(1) affected a substantial right. The Court acknowledged an unpublished opinion holding to the contrary. *United States v. Hernandez*, 213 F. App'x 457 (6th Cir. 2007). The approach in *Hernandez*, however, is irreconcilable with *Blackie*. In *Hernandez*, the Court never considered the right to meaningful appellate review, the substantial right recognized in *Blackie*. Because *Blackie* is published, and *Hernandez* unpublished, we are required to follow *Blackie*.

courts to mindlessly apply the guidelines without utilizing their own expertise to arrive at a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). By finding blatant disregard for the commands of § 3553(c) plain error, we "help maintain its requirements as mandatory, and not some formality that can be ignored without consequence." *Blackie*, 548 F.3d at 403. Wallace's sentence was therefore procedurally unreasonable, even under plain error review.

## CONCLUSION

For the foregoing reason, Wallace's conviction is **AFFIRMED**, but her sentence is **VACATED**, and the case is **REMANDED** for re-sentencing.

_____

**CONCURRENCE**

_____

MERRITT, Circuit Judge, concurring.  Under 18 U.S.C. § 3553(c), a sentencing court is expressly required to give its "reasons" for its sentence; that is a requirement of the legislative branch we must insist on maintaining and it did not occur in this case.  The court below simply mistakenly failed to mention or acknowledge Wallace's "disparity" argument.  Where a defendant's main point is stated a few minutes before sentencing, it writes the statutory requirement out of existence to say — contrary to the statute — that the sentencing court need not give any reason regarding the defendant's main point.  Courts are required to follow statutory commands.  However we describe the error — plain, unplain, negligent, intentional, obvious, etc. — the statute was violated.  I, therefore, concur in Judge Clay's opinion and disagree with the dissent.

_____

## CONCURRING IN PART AND DISSENTING IN PART
_____

McKEAGUE, Circuit Judge, concurring in part and dissenting in part. I concur in the majority's conclusion that defendant Barbara Wallace's conviction must be affirmed. I also concur in the determination that because defendant did not properly preserve her objection in the district court, her present claim that the sentence is procedurally unreasonable is subject to review only for plain error. I concur in the majority's formulation of the four-part standard that governs our plain error analysis. Yet, despite the majority's considerable efforts, I remain unpersuaded that the sentencing court's *procedural* error, in failing to adequately explain its sentencing decision, either affected defendant's *substantial* rights or affected the fairness, integrity, or public reputation of the judicial proceedings. Hence, although I am not unsympathetic with Wallace's request for leniency, it is evident that she has not carried her burden of meeting the third and fourth prerequisites to relief for plain error. I respectfully dissent, therefore, from the decision vacating the sentence and remanding for re-sentencing.

Defendant Wallace expressly recognized at sentencing that the district court had correctly calculated the applicable advisory Guidelines range to be 78 to 97 months. In allocution, both Wallace and her attorney asked the court to have "mercy," citing such considerations as: her lack of a prior criminal record; her steady employment history as a "serving person" (nurse's assistant at a VA medical center in California); her single motherhood of two small children; and her relatively insignificant role in the drug trafficking offense (in comparison to her more culpable boyfriend, Damien White-Baber, who received a sentence of only 36 months). Wallace did not ask for a downward departure of any type and did not expressly request or propose a downward variance from the Guidelines range. Neither she nor her attorney suggested a specific prison term that would be "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a). Their unspecific request for mercy could reasonably be construed as seeking either a downward variance or simply a sentence at the low end of the advisory Guidelines range, the latter of which Wallace received.

For the government, the Assistant U.S. Attorney responded by emphasizing Wallace's persistent refusal to acknowledge her culpability and accept responsibility for her wrongdoing. The AUSA also noted additional evidence indicating that Wallace's involvement in the drug trafficking scheme was not as limited as the conduct for which she was convicted. The AUSA identified three obvious reasons why co-defendant White-Baber's sentence was more lenient despite his greater culpability: (1) White-Baber pled guilty and received credit for acceptance of responsibility; (2) Wallace was found guilty of perjury for giving false testimony and her offense level was therefore increased for obstruction of justice; and (3) White-Baber received a downward departure due to his sickle cell anemia condition. The AUSA concluded her remarks by observing that "there is really no reason not to impose a guideline sentence" and arguing that Wallace should therefore be sentenced within the Guidelines range, i.e., on par with similarly situated offenders nationwide, because such consistency is the very purpose of the federal Sentencing Guidelines.

Immediately after the AUSA's remarks, the district court declared its sentencing judgment and rationale very succinctly:

> It is a tragedy that Barbara Wallace is in court to be sentenced this afternoon. The - - she walked the wrong road but corrected it and accomplished something in her life that maybe not all members of her family had. She was active in service as a part of her work to patients. She clearly made one important error, her association with Damien, and she's here today as a result of that, and it's a tragedy.
>
> The - - I've given every careful consideration that I can to any objectively reasonable basis for a departure from the guideline range, fully considering the fact that we are not bound by the guideline range, but nevertheless being able [sic][1] to determine any objectively reasonable predicate for departure below that guideline range that also respects the conclusions that the jury reached. My only hope in imposing the sentence that I believe is appropriate is that you, Ms. Wallace, leave here, understanding that you will have a significant sentence to serve, with the - - not only the hope but the confidence that once that's done, you still have a full life to live and a contribution to make to your children's lives.

---

[1] Whether the district judge misspoke or the court reporter made a transcription error, it is obvious from context that in place of "able," the district judge meant "unable."

Sent. tr. at 19-20, JA 826-27. The district court went on to announce a sentence of 78 months' imprisonment, at the low end of the advisory Guidelines range.

At the conclusion of the sentencing hearing, the district court twice asked counsel, per *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004), if there were any additional objections to the sentence imposed. Twice counsel for defendant Wallace answered, "No, your honor." On appeal, Wallace contends the sentence is procedurally unreasonable because the district court did not sufficiently explain, with reference to the § 3553(a) factors, why it was appropriate to sentence Wallace to a prison term more than twice as long as that received by White-Baber. The government correctly contends that, because Wallace did not expressly assert this procedural unreasonableness objection at the time of sentencing, the objection is deemed forfeited and is reviewable on appeal only for plain error. *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc).

The majority opinion fairly explains why the district court's failure to explicitly address Wallace's non-frivolous argument for a shorter sentence could be deemed to render the sentence procedurally unreasonable. Yet, the majority observes that the real question is whether there was plain error and acknowledges that plain error review is extremely deferential. Consistent with this deference, the majority recognizes that plain error is remediable only upon a showing of prejudice to defendant's substantial rights and a showing that the error "affected the fairness, integrity, or public reputation of the judicial proceedings." The majority goes on to acknowledge that the three justifications for the sentencing disparity identified by the AUSA at the sentencing hearing are "facially legitimate" and "arguably explain the sentencing disparity." Nonetheless, for reasons wholly unpersuasive, the majority jettisons due deference and strains to conclude that re-sentencing is warranted.

While I agree that the district court should have done a better job of explaining its reasoning, Wallace has not demonstrated *how* her substantial rights were prejudiced by the district judge's failure to explain why he rejected her disparity argument. The issues presented by this sentencing were quite simple. The above summary of the parties' positions fairly embodies the relevant arguments presented to the district court. Both parties' positions and the court's assessment and decision occupy less than eleven transcript pages and likely

took less than ten minutes' time. Although the district judge did not explain *why* he was not sympathetic with Wallace's disparity argument—apart from saying that it did not represent an objectively reasonable basis for departure from the Guidelines range—it can hardly be argued that he was oblivious to the argument or inadvertently overlooked it, such that he would likely impose a different sentence if he were required to explain on remand. There is no suggestion that the district judge left the bench, fell asleep, or was otherwise distracted from hearing the argument. Considering the simplicity and straightforwardness of Wallace's argument, it is clear that the district court considered it and intentionally rejected it. And considering that the three justifications for the disparity identified by the AUSA are undisputed and were stated on the record immediately before the district court announced the sentence, the conclusion is practically unavoidable that the district court rejected Wallace's argument for the very reasons that the AUSA had just recited.

There is no manifest reason to believe Wallace's substantial rights (as opposed to her technical procedural rights) were affected by the district court's failure to make explicit what was so obviously implicit that Wallace and her attorney did not even bother to object, despite having been given two opportunities to do so. Moreover, inasmuch as Wallace has not shown that her substantial rights were affected, it follows that she has also failed to show that the lack of explanation impugned the "fairness, integrity or public reputation" of the sentencing proceeding. Wallace having thus failed to meet two of the four essential requirements for plain error relief, I would uphold the district court's judgment of sentence.

This conclusion is supported by the en banc court's reasoning in *Vonner*, where we noted that the district court did not specifically address all of Vonner's arguments and thus failed to ensure that Vonner, the public, and the court of appeals understood why it picked the sentence it did. *Vonner*, 516 F.3d at 386. Nevertheless, this was held *not* to constitute remediable "plain error." The court explained:

> Whether the court's brief explanation for this sentence sufficed or not, any potential error was not "plain." Although Congress requires a court to give "the reasons" for its sentence, 18 U.S.C. § 3553(c), it does not say that courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences. The statute also distinguishes between within-guidelines sentences like this one and outside-guidelines sentences, requiring judges to give "the specific reason" for imposing an outside-

guidelines sentence, 18 U.S.C. § 3553(c)(2), but imposing no similar requirement for within-guidelines sentences.

*Id.* at 387. Here, too, the sentence imposed was within—in fact, at the low end of—the Guidelines range. It was presumptively reasonable. Under such circumstances, as recognized in *Vonner*, with reference to *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456 (2007), the law gives greater leeway to the sentencing court:

> Consistent with the statute, *Rita* also suggests a distinction between within- and outside-guidelines sentences, saying that, where a judge imposes a within-guidelines sentence, he "will *normally* ... explain why he has rejected ... arguments" for a different sentence, but insisting that, "[w]here the judge imposes a sentence outside the Guidelines, the judge *will* explain why he has done so." *Rita*, 127 S.Ct. at 2468 (emphases added). At the same time that the Court encourages district court judges to give "reasoned" explanations for *all* sentencing decisions (as indeed do we), it confirms that "[t]he law leaves much, in this respect, to the judge's own professional judgment." *Id.* The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not." *Id.*

> That flexibility is particularly relevant when the district court agrees with the Sentencing Commission's recommendations. "[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation" because "[c]ircumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3553(a) and other congressional mandates) in the typical case." Id.; *see also id.* at 2469 ("Where a matter is ... conceptually simple ... and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively."). In this setting, the question is whether "[t]he record makes clear that the sentencing judge listened to each argument," "considered the supporting evidence," was "fully aware" of the defendant's circumstances and took "them into account" in sentencing him. *Id.* at 2469.

*Vonner*, 516 F.3d at 387.

The above reasoning applies with equal force in this case. The district court imposed a sentence within the Guidelines range. By observing that it had been presented with no objectively reasonable basis for departing from the Guidelines range, the district court implied its agreement with the Sentencing Commission's determination of the appropriate sentence. The disparity objection asserted by Wallace was conceptually simple. The record

shows that the court listened to the argument and considered the supporting evidence, and was fully aware of Wallace's history and characteristics and took them into account. Under such circumstances, a lengthy explanation was not required. And finally, even if the explanation were so deficient as to frustrate meaningful review and therefore constitute procedural error, Wallace has fallen far short of carrying *her* burden of demonstrating that the error prejudiced her substantial rights and rendered the sentencing proceeding fundamentally unfair.

Even though we as appellate judges might very well have been reasonably inclined to vary downward from the advisory Guidelines range if we had the task of sentencing Barbara Wallace in the first instance, this is insufficient reason to hold that the district court abused its discretion and committed remediable plain error by sentencing her at the low end of the range without specifically explaining why her disparity objection was unavailing. I would therefore affirm the district court's judgment of sentence over defendant Wallace's procedural unreasonableness challenge.