**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0241n.06

Case No. 19-3735

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

May 01, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DAVID CROSBY, | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |

BEFORE: MERRITT, SUHRHEINRICH, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. David Crosby pleaded guilty to unlawfully possessing a firearm. The district court imposed a within-Guidelines sentence of 72 months. Crosby claims the court procedurally erred when it failed to address one of his leniency arguments. We affirm.

In April 2018, a security guard at a nursing home discovered a man sleeping in the lobby. The guard called the police. When the officers arrived, the guard told them that the man, Crosby, came to the building at 6:00 a.m. asking to see his girlfriend (an employee at the facility) and his son. The guard added that Crosby was hallucinating, claiming to see imaginary people in the bushes outside. The officers woke Crosby up and asked him to leave. As he leaned forward, one of the officers spotted a pistol lying on the chair on which he had slept. The officers arrested Crosby and seized the gun, which they later learned was not only loaded but stolen.

Crosby, a convicted felon, pleaded guilty to one count of unlawful possession of a firearm. The Sentencing Guidelines recommended 70 to 87 months in prison. At the outset of the sentencing hearing, Crosby's counsel objected to this range: He urged the court to discount a portion of Crosby's criminal history—two convictions for robbery-related offenses. "[I]f we just took out the robbery" from "some time ago," counsel noted, that would lower Crosby's criminal history and "would be more accurate and more fair." R. 41 at 8.

The court rejected the request and sentenced Crosby to 72 months.

On appeal, Crosby claims the court erred because it did not sufficiently explain why it rejected his argument that the pre-sentence report overstated his criminal history. Crosby did not raise this procedural point below when the court rejected his request or at the end of the sentencing proceeding when the court asked whether counsel had any other objections. This procedural-reasonableness claim, the parties agree, receives plain-error review. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). To prevail, Crosby must show (1) error (2) that was obvious, (3) that affected his rights, and (4) that affected the fairness or integrity of the judicial process. *Id.*

In reviewing sentences for procedural error, we look for common-sense mistakes. *See Gall v. United States*, 552 U.S. 38, 51 (2007). Failing to adequately explain a sentence is one example within this category. *Id.* at 50; *see also* 18 U.S.C. § 3553(c). Failing to address a defendant's "non-frivolous arguments" is another. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). When district courts explain why they imposed a sentence, they "promote the perception of fair sentencing" and "allow for meaningful appellate review." *Gall*, 552 U.S. at 50. That explanation does not require a lot. It just requires the court "to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decision-making

2

authority." *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009) (quotation omitted); *see Vonner*, 516 F.3d at 387.

No error, and most certainly not a plain error, occurred because the court's explanation sufficed. After hearing arguments, including Crosby's argument about his criminal history, the court set to work evaluating Crosby's crime, his characteristics and the court's sentencing obligations under the law. Before selecting a sentence, it detailed the nature of Crosby's offense, recited Crosby's criminal record, discussed each of the § 3553(a) factors, and acknowledged Crosby's letter expressing his contrition. It asked Crosby about his drug addiction and pointed out that combining drugs and guns could lead to serious consequences: "[Y]ou have a gun in your pocket, and you think someone's attacking you at that time, you start shooting. Thank God nobody was hurt and you didn't pull that gun out. So that's a real danger." R. 41 at 19. The court also discussed Crosby's background: "It's not all bad. It's not all good. There's always a balancing here. You didn't exactly have the best childhood growing up. We understand that. Appears to be some abuse in your childhood. Take that into consideration." *Id.*

Included in this discussion was consideration of Crosby's past crimes: "You do have a background as far as criminal history. I have to consider that. Robbery's one thing and punching a police officer in the face is another. We've gone through your criminal history totally. I don't have to go over that again." *Id.* at 20.

All told, the district court's decision to impose a sentence at the low end of the guidelines range reflected a reasonable balance of these factors. Crosby committed a serious offense— carrying a loaded firearm into a nursing home—and had a serious criminal record. That said, he also had a hard upbringing, had expressed contrition for his actions, and made clear to the court that he wanted to reform his ways. The district court's explanation may have been concise at some

points. But it was adequate. The court's discussion shows that it considered the arguments and had a reasoned basis for its decision.

Crosby complains that the court failed to address his argument about his prior robbery convictions because it did not mention the point explicitly or refer to any of the details of the offense, such as Crosby's age at the time of his robbery conviction. "Other than the district judge's presence in the courtroom," Crosby claims, "the entire sentencing transcript fails to make clear whether the district judge even considered the argument." Appellant Br. 13 (quoting *Wallace*, 597 F.3d at 806).

But this contention overlooks two realities.

One is that Crosby is wrong about what the sentencing transcript shows. The court twice acknowledged Crosby's argument and rejected it. The first instance occurred after Crosby said the court should not consider the robbery at all because it happened too long ago to be included in his pre-sentence report. After a probation officer clarified that the conviction did fall within the time limit, the court overruled Crosby's objection. This exchange shows the district court knew Crosby wanted his robbery excluded from consideration and that it disagreed.

The second instance occurred after Crosby's counsel decided to restyle his objection into an argument for leniency. During its explanation of Crosby's sentence, the court again picked up on counsel's suggestion and rejected it. As far as crimes in Crosby's past go, it observed, "[r]obbery's one thing and punching a police officer in the face is another." R. 41 at 20. Much as Crosby may disagree, the court reasoned that his robbery conviction was serious enough that it should be considered despite the gap in time. The court's comment about "punching a police officer" confirms the point. Crosby's counsel did not mention this offense when discussing Crosby's criminal history. In fact, counsel tried to minimize Crosby's other offenses:

"The primary serious offense that Mr. Crosby had was the robbery convictions. He has not, since that time, committed any offenses that are [anywhere] close to [as] serious as a robbery conviction." *Id.* at 6. Crosby left it to the government to point out that since the robbery he had punched an "officer in the face and resisted arrest." *Id.* at 9. The court's decision to incorporate a fact from the government's rebuttal into its explanation confirms that the court considered and rejected Crosby's argument.

The other reality is that we've consistently rejected the idea that district courts must explicitly refer to a defendant's argument or give detailed reasons for the rejection of each one. *See, e.g.*, *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009); *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007); *United States v. Liou*, 491 F.3d 334, 339 n.4 (6th Cir. 2007). We require explanation to ensure a district court had a "reasoned basis" for its sentence. *Liou*, 491 F.3d at 338 (quotation omitted). Forcing courts to recite "magic words like, 'I have considered [the defendant's] arguments and I reject them'" does little to serve that purpose. *United States v. Chiolo*, 643 F.3d 177, 184 (6th Cir. 2011).

Crosby persists that two cases lead to a different conclusion: *United States v. Lucas*, 787 F. App'x 272, 281 (6th Cir. 2019), and *United States v. Wallace*, 597 F.3d 794, 806 (6th Cir. 2010). In those cases, it is true, we ruled that district courts committed plain error because they failed sufficiently to address the defendants' arguments. *Id.* Sufficiently is the key point. What suffices in one case may not suffice in another. On closer examination, neither case fixes Crosby's problem. In *Lucas*, the district court failed to discuss arguments at resentencing that we had "explicitly listed" in our prior opinion remanding the case. 787 F. App'x at 281. No such recalcitrance occurred here, still less a situation in which the defendant's arguments were "virtually absent from the resentencing transcript." *Id.* at 280. And in *Wallace*, we reversed because the

district court's explanation was so lacking that it left us "unable to answer the simple question of why the district judge decided to impose [the] sentence." 597 F.3d at 803. Crosby's case leaves us with plenty of answers.

We affirm.