**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0740n.06

No. 10-5126

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 24, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF KENTUCKY |
| ARRON KEITH RHODES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     KETHLEDGE and WHITE, Circuit Judges; and BECKWITH,[*] Senior District Judge.

**BECKWITH, Senior District Judge.**  Defendant-Appellant Arron Keith Rhodes appeals the 30 month sentence of imprisonment imposed by the district court following his conviction on one count of bank fraud in violation of 18 U.S.C. § 1344.  Rhodes's appeal raises three assignments of error: 1) the district court miscalculated the amount of loss caused by the offense; 2) the district court erred by permitting both the victim of the offense and the victim's attorney to address the court during the sentencing hearing; and 3) the district court erred by failing to adequately explain the reasons for the sentence it selected and by failing to address his non-frivolous arguments for a sentence below the Sentencing Guidelines range.  For the reasons that follow, we conclude that

---

[*]The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

Rhodes's first two assignments of error are without merit and they are, therefore, overruled**.** We agree with Rhodes, however, that the district court committed reversible error by failing to address his non-frivolous arguments for a sentence below the advisory Guidelines range. Accordingly, the judgment of the district court is **AFFIRMED IN PART AND REVERSED IN PART**. Appellant's sentence is **VACATED** and this case is **REMANDED** for resentencing.

I.

Rhodes was responsible for handling the finances of three companies owned by David Fried - Comtronics, Inc., Comtronics Enterprises, Inc., and Tribute 911, LLC. Rhodes was also a partner with Fried in Comtronics Enterprises. Rhodes embezzled approximately $380,000 from these companies between July 2005 and January 2009, mainly by authorizing electronic funds transfers ("EFT's") from the companies' accounts into his personal accounts, and also by fraudulently issuing himself checks drawn on company accounts.

Rhodes's illegal activities came to light in January 2009 when a bookkeeper noticed a discrepancy in the records concerning his compensation. Fried then reviewed the books and discovered the unauthorized EFT's into Rhodes's accounts. Fried and his attorney, Jerry Anderson, confronted Rhodes about the transfers and Rhodes admitted at that time to stealing approximately $130,000. Rhodes and Fried entered into an agreement in which Rhodes admitted to the fraudulent EFT's and agreed to repay Fried $127,500 by signing over the titles to two new luxury vehicles, surrendering his interest in Comtronics Enterprises, and by allowing Fried's son to live rent-free in one of his properties for a year. A subsequent internal audit concluded that Rhodes had embezzled

over $381,000 from the three companies. Anderson reported Rhodes's theft to the U.S. Secret

Service when the audit uncovered additional unauthorized transfers.

Rhodes entered into a plea agreement with the government and in September 2009 pled guilty

to an information charging him with one count of bank fraud in violation of 18 U.S.C. § 1344. The

probation officer completed a presentence report ("PSR") and calculated an advisory sentencing

range under the Sentencing Guidelines. The PSR assigned Rhodes a base offense level of 7 pursuant

to U.S.S.G. § 2B1.1(a). The probation officer determined that the loss from the offense was

$318,647.09. Therefore, there was a 12 level increase pursuant to U.S.S.G. § 2B1.1(b)(1)(G)

because the loss was greater than $200,000 but less than $400,000. Rhodes received a two-level

enhancement pursuant to U.S.S.G. § 3B1.3 for abuse of a position of trust and a three-level decrease

pursuant to U.S.S.G. §§ 3E1.1(a) and (b) for acceptance of responsibility and entering a timely plea.

The final offense level was 18. Coupled with a criminal history category of I, the resulting advisory

Guidelines sentence was 27 to 33 months of imprisonment.

The PSR determined that Rhodes owed restitution of $318,647.09 to Fried. The PSR

acknowledged that Rhodes had already paid $127,500 in restitution and acknowledged that Rhodes

had sold two parcels of real property to pay restitution. The PSR also reported that in August 2009,

Rhodes purchased Buddy's Restaurant in Lexington, Kentucky for $345,000 and that he expected

to receive gross income of $78,000 per year from this business.

Finally, as is relevant here, the PSR reported that Rhodes had been diagnosed by a licensed

clinical worker as having major depressive disorder, bipolar disorder, obsessive compulsive disorder,

and partner relational problem. The social worker stated that Rhodes's offense could not be blamed

on his emotional disorders but that they were related to his criminal behavior. The social worker stated that Rhodes was responding well to therapy and opined that his prognosis was good and that he did not present a risk to reoffend.

Rhodes lodged two objections to the PSR. First, he objected to the two-level enhancement for abuse of a position of trust. Rhodes, however, did not appeal from that aspect of the district court's judgment and so that issue is not before us. Second, Rhodes objected to the probation officer's calculation of the amount of loss caused by the offense. Specifically, Rhodes contended that he should have received a credit of $127,500 against the loss calculation because of the restitution he had already paid Fried. Additionally, prior to the sentencing hearing, Rhodes filed a memorandum which asserted that consideration of the 18 U.S.C. § 3553(a) factors warranted a non-custodial sentence. In support, Rhodes highlighted, *inter alia*, his emotional disorders, his bond with his infant daughter, the social worker's report indicating that his criminal conduct was aberrant and that he presented a low risk to reoffend, his extraordinary efforts to repay restitution, and the fact that a term of imprisonment would probably foreclose his ability to make full restitution since there would be no one to run his restaurant.

Rhodes came before the district court for sentencing on January 27, 2010. At the start of the hearing, Rhodes's trial counsel reiterated his objection to the probation officer's calculation of the amount of loss. Specifically, counsel argued that Rhodes was entitled to a credit of $127,500 because the total loss from the offense was not quantified at the time he made this repayment. Additionally, Rhodes objected when he learned that the government intended to present to the court statements from Fried and Anderson on the issue of victim impact. Counsel argued that neither Fed.

R. Crim. P. 32(i)(4)(B)[1] nor 18 U.S.C. § 3771[2] permit both the victim and the victim's attorney to address the court at sentencing.

The district court overruled both of Rhodes's objections. With regard to the loss calculation, the district court appears to have adopted the government's position that Rhodes was not entitled to a credit because the victim detected the crime before he repaid any of the stolen money. The court did state, however, that it would "consider that this defendant has reduced his indebtedness as part of its evaluation of [the] 3553 factors." Had the district judge sustained this objection, Rhodes's offense calculation would have been reduced by two levels and the Guidelines sentencing range would have changed to 21 to 27 months of imprisonment. The district court denied Rhodes's second objection on the grounds that it was reasonable for both the victim and the victim's attorney to address the court.

---

[1] Rule 32 states in relevant part:

> Before imposing sentence, the court must address any victim of the crime who is present at sentencing and must permit the victim to be reasonably heard.

Fed. R. Crim. P. 32(i)(4)(B).

[2] Section 3771 states in relevant part:

> A crime victim has the . . . right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

18 U.S.C. § 3771(a)(4).

Having overruled Rhodes's objections, the district court allowed Fried and Anderson to address the issue of sentencing. Anderson argued that Rhodes had not accepted responsibility for his criminal behavior and that he was trying to "con the Court" because he had not complied with the January 2009 agreement to repay Fried $127,500. Fried's statement addressed Rhodes's breach of trust and he too suggested that Rhodes had not accepted responsibility for his criminal conduct.

Rhodes then spoke on his own behalf. Rhodes expressed remorse and his intention to repay Fried the money he had stolen. Rhodes stated that he believed that the only way he could repay Fried was to keep working. Rhodes also said that he needed to keep working in order to support his daughter.

Rhodes's attorney then asked the district judge to impose a non-custodial sentence. Counsel argued that a sentence of probation, home confinement, or community confinement would best permit Rhodes to make full restitution. In particular, counsel emphasized that Rhodes's education and work experience had permitted him to run his restaurant successfully and that he had been making restitution payments, totaling approximately $87,000, to her trust account that she was prepared to turn over on his behalf. Counsel then discussed Rhodes's efforts to make restitution, the fact that this was an aberrant crime, his low risk of recidivism, as indicated by the social worker, and his efforts to address the emotional problems that contributed to his commission of the offense. Counsel also indicated that since Rhodes was now self-employed, a term of imprisonment was not required for deterrence purposes and argued that he had already been sufficiently punished for his offense.

The government, on the other hand, argued that all of the factors identified by Rhodes were already taken into consideration by the Sentencing Guidelines, and that, therefore, a sentence below the Guidelines range was inappropriate. The government stated that in light of the seriousness of the offense, the duration of Rhodes's criminal conduct, the amount of money stolen, and the need to promote respect for the law, a sentence at the bottom of the Guidelines range was appropriate.

The district judge then pronounced her sentence and the reasons for it:

> All counsel have certainly given this Court good food for thought. This is, indeed, an unusual case. Unlike so many who come before this Court with no hope, no education, no family, and a lengthy criminal history, this defendant has nocriminal history, loving and supportive family, a college education, intelligence, has been employed and has been employable, is well liked and well trusted and has been well compensated for his work.

> Ordinarily, these factors would, indeed, mitigate against a sentence of incarceration in this case. But in this particular case, they don't. This defendant didn't have to be armed with a gun. He had a pen, access to a computer, respectability, and the trust of colleagues. He didn't have to rob a bank. He had trust that enabled him to, over a four-year period of time, engage in 49 separate criminal transactions. And that is based on his admission in the factual statement contained in the plea agreement. Also, in the plea agreement at Paragraph 6, the defendant admits that he stole at least $318,647.09 in these some-49 transactions. The Court wants to make it clear that for purposes of the sentence it will rely only on the amount that the defendant has admitted to in the plea agreement. I recognize that there is a dispute and that it may in fact be more; but given the limited record before this Court and the fact that this is a criminal, not a civil case, the Court will consider this sentence based only on the admissions contained only in the plea agreement.

> Therefore, Mr. Arron Keith Rhodes, it is the judgment of this Court that you are hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 30 months. This is a sentence that is based on the characteristics of this defendant, the seriousness of the crime, and will promote respect for the law and provide treatment for the defendant during the period of his incarceration.

Sent. Tr. at 34-35. The district court also imposed five years of supervised release and ordered

Rhodes to pay restitution of $318,647.09.

The district court entered its judgment and commitment order on January 29, 2010 and

Rhodes filed a timely notice of appeal. Therefore, we have jurisdiction over this appeal pursuant

to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

II.

As indicated, Rhodes raises three assignments of error in this appeal. We take up these

assignments of error seriatim.

A. Loss Calculation

Rhodes's first assignment of error argues that the district court erred in calculating the

advisory Guidelines sentence by not giving him a credit of $127,500 against the total loss from the

offense based on his initial restitution payment to Fried. Rhodes contends that he was entitled to a

credit pursuant to Application Note 3(E) to U.S.S.G. § 2B1.1 because "the loss involved . . . was not

'detected' at the time that he repaid the sum of $127,500." Appellant's Brief at 13. The district

court adopted the government's argument that Rhodes was not entitled to a credit because he did not

make this payment until Fried confronted him about the unauthorized EFT's.

We review the district court's findings of fact at sentencing for clear error and its

interpretation of the Sentencing Guidelines de novo. *United States v. Canestraro*, 282 F.3d 427, 431

(6th Cir. 2002). The district court's application of the Sentencing Guidelines to undisputed facts,

however, is entitled to deference. *Id.* In this case, the facts surrounding the amount of loss caused

by the offense are not in issue. Rather, at issue is the legal question whether Rhodes is entitled under

the Sentencing Guidelines to a credit against the loss based on the undisputed facts. Accordingly,

we give deference to the district court's interpretation and application of the Sentencing Guidelines.

> Application Note 3(E) to U.S.S.G. § 2B1.1 states in relevant part:

> Credits Against Loss.--Loss shall be reduced by the following:

> The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

U.S.S.G. § 3E1.1, Application Note 3(E)(i). Relying on this section, Rhodes contends that Fried had

not "fully detected" the offense when he made the initial payment of $127,500 because the

subsequent audit went on to determine that the loss was actually greater. Appellant's Brief at 13.

Rhodes argues that until the audit was completed, Fried only had "suspicions" that the EFT's were

improper and that, therefore, he is entitled to a credit against the loss. We reject this argument,

however, because it is based on a misinterpretation of both the record and the Sentencing Guidelines.

Although not stated in precisely this fashion, Rhodes apparently interprets Application Note

3(E)(i) so that an offense is not "detected" until the total loss from the offense is determined. This

interpretation, however, is at odds with the plain language of the application note, which clearly

states that the defendant is entitled to a credit for money returned before the *"offense"* is detected

by the victim, not when the *amount of loss* is detected by the victim. Rhodes does not cite any

authority in support of his interpretation of this application note. *United States v. Calkins*, 193 F.

App'x 417 (6th Cir. 2006), which Rhodes does cite in his brief, is inapposite because it addressed

the sentencing court's misapplication of Application Note 3(E)(ii), which provides for a credit for the amount the victim recovers from the disposition of collateral.

Rhodes's contention that he is entitled to a credit pursuant to Application Note 3(E) because Fried only "suspected" him of criminal activity is not supported by the record. The PSR states that a bookkeeper discovered the "fraudulent activity," that Fried confronted Rhodes about the "known fraudulent EFT's," and that Rhodes admitted to making the "fraudulent EFT's." PSR ¶¶ 7-8. Thus, the PSR's findings of fact, to which there were no objections, indicate that Fried recognized that Rhodes had been engaging in criminal conduct. Therefore, to say that Fried only suspected Rhodes of criminal activity is a mischaracterization of the record. In any event, even accepting Rhodes's contention that Fried only had "suspicions" about these transactions, he still would not be entitled to a credit for $127,500 because he made this payment after he "knew or reasonably should have known that the offense was detected or about to be detected by a victim[.]" U.S.S.G. § 2B1.1, Application Note 3(E)(i)(II). When Fried confronted Rhodes about his "suspicions" and informed him that he was going to conduct a further audit of the books, Rhodes knew or should have known that the audit would uncover the full extent of his fraud. In either case, the record plainly demonstrates that Rhodes repaid the $127,500 after the offense was detected or was about to be detected.

The district court did not err by not giving Rhodes a credit against the total loss in calculating the Guidelines sentencing range. Accordingly, Rhodes's first assignment of error is not well-taken.

## B. <u>Victim Impact Statements</u>

Rhodes's second assignment of error contends that the district judge erred by allowing both the victim and the victim's attorney to address the court at his sentencing hearing. Rhodes argues that while both 18 U.S.C. § 3771(a)(4) and Rule 32(i)(4)(B) of the Federal Rules of Criminal Procedure require the district court to "permit the victim to be reasonably heard," neither provision permits both the victim and the victim's attorney to address the court on the issue of sentencing. Rhodes concedes that there is no controlling precedent on this point, but urges this Court to interpret these provisions so that the practice is outlawed.

The problem with Rhodes's argument as we see it is that he reads § 3771 and Rule 32(i)(4)(B) as imposing limits on the information the sentencing court is permitted to consider in imposing a sentence rather than what they are - a vesting in the victim of the offense the right of allocution. *See Kenna v. U.S. Dist. Court C.D.Cal.*, 435 F.3d 1011, 1013 (9th Cir. 2006) (stating that § 3771 "guarantees crime victims eight different rights, and unlike the prior crime victims' rights statutes, allows both the government and the victims to enforce them."). As the government correctly points out in its brief, however, pursuant to 18 U.S.C. § 3661 there is "[n]o limitation . . . concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Moreover, in *United States v. Tucker*, 404 U.S. 443 (1972), the Supreme Court commented that in making a sentencing determination, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Id.* at 446. It is clear, therefore, that a sentencing court has very

broad discretion in the types and sources of information it may receive in developing an appropriate sentence for a criminal defendant. Fried may not have had a *right* to present both his statement and Anderson's statement at the sentencing hearing. Nevertheless, it was well within the district court's broad discretion to hear from both Fried and Anderson on an appropriate sentence. *C.f. United States v. Leach,* 206 F. App'x. 432, 435 (6th Cir. 2006) (unpublished) (holding that district court properly allowed testimony by defendant's ex-wife at sentencing *whether or not* she was accurately considered a "victim" under § 3771 because that law "did not alter. . . a district court's traditionally broad discretion to consider a wide variety of factors at sentencing") (internal quotation marks omitted)).

Rhodes offers two additional reasons for reversing the district court's judgment. First, Rhodes contends that his sentencing hearing was procedurally defective because he had no prior notice that the district judge was going to permit both Fried and Anderson to allocute at the hearing. Rhodes argues, therefore, that he was denied the opportunity to discover the nature of the victim's comments and meet the evidence against him. He also argues that Anderson's statement that "the con goes on" was unfairly prejudicial and may have influenced the judge to impose a sentence above the low end of the Guidelines range. Assuming without deciding that the district court erred by not giving Rhodes prior notice that it was going to allow both Fried and Anderson to allocute at sentencing, we find this error to be harmless. Unlike Rhodes, we think it unlikely that Anderson's comments swayed the district judge's sentencing determination. As previously stated, Anderson's statement principally addressed whether Rhodes had accepted responsibility for his criminal conduct. In sentencing Rhodes at the middle of the range, however, it appears that the district court relied

almost exclusively on the nature and circumstances of the offense, in particular his abuse of position

of trust. We conclude, therefore, that Rhodes was not prejudiced by this alleged error.

Accordingly, this assignment of error is not well-taken.

## C. Reasonableness of Sentence

Rhodes's third assignment of error contends that his sentence of 30 months of imprisonment

was procedurally unreasonable because the district court failed to adequately consider the 18 U.S.C.

§ 3553(a) sentencing factors and did not address his non-frivolous arguments for a sentence below

the Guidelines range. Rhodes also raises a substantive reasonableness challenge.

The Court of Appeals reviews sentences for reasonableness. *United States v. Smith*,

474 F.3d 888, 892 (6th Cir. 2007). A sentence within the correctly-calculated Guidelines range starts

with a rebuttable presumption of reasonableness on appeal. *United States v. Conatser*, 514 F.3d 508,

520 (6th Cir. 2008). The presumption of reasonableness may be overcome, however, by showing

that the sentence was either procedurally unreasonable or substantively unreasonable. Procedural

unreasonableness claims are typically reviewed for abuse of discretion. *United States v. Gunter*, 600

F.3d 642, 645 (6th Cir. 2010). "However, where, as here, the defendant fails to lodge any objection

at the end of the sentencing hearing in response to a properly worded invitation from the count in

compliance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), we review only for plain error

a challenge to the district court's explanation for the sentence selected."[3] Plain error requires a

---

[3] At the conclusion of the sentencing hearing, the district court asked the parties: "Is there any legal reason, other than what's been previously stated, that sentence should not be imposed?" Rhodes's attorney replied that "I don't have any legal reason, other than what's previously stated" except that the attorney clarified with the court that the amount of restitution

showing of "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010). A sentence is procedurally unreasonable if the district judge fails to consider the factors listed in 18 U.S.C. § 3553(a) or fails to provide an adequate explanation of its reasons for the particular sentence chosen. *United States v. Garcia-Robles*, 562 F.3d 763, 767 (6th Cir. 2009). Additionally, a sentence is procedurally unreasonable if the district judge fails to consider and explain its reasons for rejecting the defendant's non-frivolous arguments for a lower sentence. *Wallace*, 597 F.3d at 803. The district court's failure to acknowledge and consider the defendant's non-frivolous arguments for a lower sentence is plain error mandating that the Court of Appeals remand the case for re-sentencing. *Id.* at 806-08. We agree with Rhodes that his sentence of 30 months of imprisonment was procedurally unreasonable.

In his sentencing memorandum, and during the sentencing hearing, Rhodes advanced a number of reasons based in fact and law for a sentence below the Guidelines range. Among other reasons, Rhodes stressed his extraordinary restitution efforts and ability to repay restitution fully if he were not incarcerated, the aberrance of his behavior and his emotional disorders, his low risk to reoffend, as indicated by the opinion of the social worker as well as his self-employment, his bond with his daughter and the need to provide her financial support. These factors have all been recognized at one time or another as providing appropriate grounds for a below-Guidelines sentence.

---

ordered by the court would take into account the amount of restitution already paid. Rhodes's counsel did not challenge the sufficiency of the district court's question until oral arguments before this Court. We therefore deem such argument waived and assume that plain error review applies. *See United States v. Beaty*, 245 F.3d 617, 625 n.5 (6th Cir. 2001).

*United States v. DeMonte*, 25 F.3d 343, 346-47 (6th Cir. 1994) (defendant's voluntary restitution payments before an adjudication of guilt may justify downward departure)[4]; *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008) (recognizing that aberrant criminal behavior may justify downward variance); *United States v. Borho*, 485 F.3d 904, 913 (6th Cir. 2007) (although a discouraged factor, the defendant's mental or emotional condition may justify variance from Guidelines sentence); *United States v. Cherry*, 487 F.3d 366, 369-70 (6th Cir. 2007) (district court's conclusion that defendant presented low risk to reoffend supported downward variance); *United States v. Husein*, 478 F.3d 318, 329-30 (6th Cir. 2007) ("[F]amily circumstances can form the basis of either a Guidelines-authorized departure or a non-Guidelines, §3553(a)-based departure, also known as a variance."). In providing her statement of reasons for the sentence she selected, the district judge acknowledged Rhodes's lack of criminal history, education, employability, and family support, but concluded that they were aggravating factors, rather than mitigating factors, because Rhodes abused his trust in committing the offense. The Court then imposed a sentence of 30 months of imprisonment with only a conclusory statement that the sentence was based on Rhodes's characteristics, the seriousness of the offense, the need to promote respect for the law, and the need to provide Rhodes with treatment.

---

[4] In *United States v. Harpst*, 949 F.2d 860, 863 (6th Cir. 1991), this Court held that the district court cannot downwardly depart from the Sentencing Guidelines in order to facilitate the defendant's ability to repay restitution. Post-*Booker,* however, district courts have discretion to vary from the sentencing range based on factors that are discouraged or prohibited under the Guidelines. *United States v. Davis*, 537 F.3d 611, 616-17 (6th Cir. 2008).

Unlike Rhodes, we have no quarrel with the district court's apparent conclusion that in some cases the criminal behavior of a defendant with no evident socio-economic disadvantages can be more egregious than the behavior of a disadvantaged and less-educated defendant. We nevertheless agree with Rhodes that the district court failed to address or even acknowledge almost all of his reasons for a below-Guidelines sentence, and that such failure constitutes plain error. *See Wallace*, 597 F.3d at 806-08. The district court did state that it would "consider the fact that this defendant has reduced his indebtedness as part of its evaluation of [the] 3553 factors," but it failed to explain the weight she gave to this factor and why it did not justify Rhodes's request for a lower sentence. The district court did not acknowledge Rhodes's mental condition as it contributed to his commission of the offense, the opinions he submitted indicating that he presented a low risk to reoffend, or his need to provide financial support to his daughter, much less explain her reasons for rejecting these factors as grounds for a variance. Where, as here, it is not clear from the record whether the district court gave consideration to the defendant's non-frivolous arguments, we must remand for resentencing. Accordingly, we conclude that Rhodes's sentence was procedurally unreasonable and that he must be re-sentenced. Given our conclusion that Rhodes's sentence was procedurally unreasonable, we decline to reach his argument that his sentence was substantively unreasonable.

## CONCLUSION

For the reasons stated, we conclude that Rhodes's first two assignments of error are without merit. To that extent, therefore, the judgment of the district court is **AFFIRMED.** We agree with Rhodes's third assignment of error, however, that his sentence was procedurally

16

unreasonable because the district court failed to explain its reasons for rejecting his non-frivolous arguments for a lower sentence. To that extent, therefore, the judgment of the district court is **REVERSED**. Rhodes's sentence is **VACATED** and this case is **REMANDED** to the district court for resentencing.