NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0396n.06

No. 09-4189

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Jun 13, 2011**

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,          )
                                   )
        **Plaintiff–Appellee,**    )          **ON APPEAL** FROM THE
                                   )          UNITED STATES DISTRICT
v.                                 )          COURT FOR THE SOUTHERN
                                   )          DISTRICT OF OHIO
KEVIN R. TINCHER,                  )
                                   )
        **Defendant–Appellant.**   )          **O P I N I O N**
                                   )
_____ )

Before:  MOORE and GIBBONS, Circuit Judges; BORMAN, District Judge.[*]

**KAREN NELSON MOORE, Circuit Judge.**   Kevin R. Tincher pleaded guilty to distributing oxycodone and cocaine, being a felon in possession of a firearm, and dealing firearms without a license.  The district court sentenced Tincher to 108 months of imprisonment and five years of supervised release.  Although the term of imprisonment falls within the Guidelines range, Tincher contends on appeal that his sentence is unreasonable.  Tincher seeks lenience because he has suffered brain damage, is addicted to drugs, and supports a minor child.  He also argues that the government "'manufactured' or 'invented'" his crimes, although he acknowledges that he was not formally entrapped.  Appellant Br. at 10.  Nevertheless, because we conclude that Tincher's sentence is procedurally and substantively reasonable, we **AFFIRM** Tincher's sentence.

_____

[*]The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

On December 19, 2007, Tincher sold thirty-eight OxyContin pills and .80 gram of cocaine to Special Agent Jeremy Godsave, who was working undercover with the Bureau of Alcohol, Tobacco, Firearms, and Explosives. On the same day, he also gave .79 gram of cocaine to the confidential informant who had arranged Tincher's sale to Agent Godsave. On January 4, 2008, Tincher sold eighteen OxyContin pills and a .41-caliber pistol to Agent Godsave. Finally, on January 8, 2008, Tincher sold a .357-caliber pistol and a .45-caliber pistol to Agent Godsave. Tincher did not have a Federal Firearms License and was a convicted felon at the time of each sale.

On February 26, 2009, Tincher pleaded guilty to two counts of distributing oxycodone, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), one count of distributing cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), one count of being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of dealing firearms without a license, 18 U.S.C. §§ 922(a)(1) and 924(a)(1)(D). In exchange, the government dismissed a second count of being a felon in possession of a firearm, one count of possessing with intent to distribute cocaine in excess of 500 grams, and one count of using and carrying a firearm during and in relation to a drug trafficking crime.

At sentencing, Tincher faced a Guidelines range of 92 to 115 months of imprisonment. Tincher argued that, although the government had not entrapped him, the government had "prodd[ed]" Tincher to commit the crimes. R. 53 (Objections to PSR at 2). He also stressed elements of his personal history, including untreated brain damage, longstanding drug abuse, a lack of education and parental guidance during his youth, and a newfound desire to raise his son.

Although the district court recognized these features, the district court viewed "the safety of the community" as its "paramount consideration" and "truly . . . the predominant factor here." R. 68 (Sent. Tr. at 23, 21). Tincher's "past criminal record [wa]s extensive," *id.* at 17, including "some 12 or 13 felonies and half a dozen, if not more, misdemeanors," *id.* at 22, which the district court described at length. The district court explained that "[t]he safety of the community is very much at risk based upon [Tincher's] past record." *Id.* The district court therefore sentenced Tincher to 108 months of imprisonment, to be followed by five years of supervised release.

## II. ANALYSIS

On appeal, Tincher argues that his sentence is unreasonable.[1] We disagree, holding instead that the district court acted within its discretion in imposing the 108-month sentence.

Preliminarily, Tincher argues that United States Sentencing Guidelines (U.S.S.G.) §§ 5H1.1, 5H1.3, 5H1.4, and 5H1.6 are unconstitutional to the extent that they forbid district courts from imposing non-Guidelines sentences on the bases of age, mental and emotional conditions, physical conditions including alcohol or drug abuse, and family ties and responsibilities. These Part H Guidelines limit the circumstances in which district courts may *depart* due to the listed bases. In the wake of *Booker*, these provisions do not prevent district courts from *varying* based on how the listed factors inform the 18 U.S.C. § 3553(a) analysis. *United States v. Davis*, 537 F.3d 611, 616–17 (6th

---

[1]Although Tincher characterizes his claim as a challenge to the substantive reasonableness of the sentence, his arguments encompass both procedural and substantive considerations. *See* Appellant Br. at 9–10 (quoting law about the need to explain the basis for rejecting a defendant's arguments), 13 (contending that "it is not clearly evident from the record" that the court took "into account" Tincher's arguments).

Cir.) (§ 5H1.1), *cert. denied*, 129 S. Ct. 752 (2008); *United States v. Baker*, 502 F.3d 465, 468 (6th Cir. 2007) (§ 5H1.6). By extension, the provisions also cannot prevent district courts from *picking which within-Guidelines sentence to impose* based on how the listed factors inform the § 3553(a) analysis. Therefore, the constitutional question that Tincher has raised relies on an overly broad understanding of what the Part H Guidelines prohibit.

## A. Procedural Reasonableness

We review sentences for abuse of discretion to determine whether the sentence is reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). For a sentence to be procedurally reasonable, "[t]he sentencing judge should set forth enough [reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). "When a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Damra*, 621 F.3d 474, 508 (6th Cir. 2010) (internal quotation marks and alteration marks omitted). "Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation." *Rita*, 551 U.S. at 357. In all cases, though, the key "question is whether '[t]he record makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances[,] and took 'them into account' in sentencing him." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir.) (en banc) (quoting *Rita*, 551 U.S. at 358), *cert. denied*, 129 S. Ct. 68 (2008).

Because the district court in this case did not ask the *Bostic* question, Tincher's failure to object after the district court announced his sentence does not limit us to plain-error review. *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (holding that "Do you have anything further for the record, Mr. Canady?" does not satisfy *Bostic*); R. 68 (Sent. Tr. at 30–31) ("Mr. Monta, anything further?").

Tincher highlights five factors to which, in his view, the district court gave inadequate weight when selecting his sentence. The district court thoroughly addressed two of these factors. First, Tincher "under[went] a personal transformation during the 18 months of prior incarceration" and now "desire[s] to raise his 18-month old son." Appellant Br. at 15. The district court recognized that Tincher "strongly desire[s] to raise his child" and took into consideration Tincher's "apparent sincerity" about his "desire to turn his life around." R. 68 (Sent. Tr. at 20, 23). It also opted not to impose an above-Guidelines sentence because the district court "hope[d] that this Defendant is ready to turn his life in the right direction." *Id.* at 24–25. Clearly, the district court understood and addressed Tincher's argument. Second, Tincher asserts that the government "manufactured" his crime, while admitting that he was not entrapped. Appellant Br. at 10. Tincher contests the government's assertion that he dealt firearms, oxycodone, or cocaine on a regular basis or in large quantities, blaming his conviction on having been "repeatedly prodded by the [confidential informant]." *Id.* at 15. In response, the district court explained that "[t]hese offenses were not manufactured as much as they were the providing of opportunities for the Defendant to commit crimes. And there's very little that the Court feels it should do" in response. R. 68 (Sent. Tr. at

20–21). The district court took that factor "into consideration to some extent but the Court c[ould ]not avoid the fact that a predisposition existed in this case to a high degree." *Id.* at 21. Putting aside the parties' dispute about the extent of Tincher's involvement in other crimes, the district court adequately explained its conclusion that Tincher was predisposed to commit the crimes to which he pleaded guilty.

The district court also considered the three other factors that Tincher finds important, despite recounting them in less detail than Tincher would have preferred. First, the district court observed that Tincher's history of drug use included "[a]lcohol, marijuana, cocaine, methamphetamine, [and] OxyContin." R. 68 (Sent. Tr. at 20). Tincher supplements these facts by noting that his drug use started at a young age. He has used marijuana and alcohol regularly since age 11 and cocaine since age 14. Second, the district court noted that Tincher received only six years of formal education, although it also observed that "[h]e's far more intelligent than his formal education would indicate." *Id.* Tincher adds that his childhood involved financial difficulties and little adult supervision. Third, the district court noted that "a host of medical issues" afflict Tincher. *Id.* It did not explain the nuances of Tincher's partially untreated brain damage, which was caused by a suicide attempt that left Tincher in a coma for three months.

Because the district court considered each of Tincher's arguments and took them into account when crafting Tincher's sentence, we find that Tincher's sentence is procedurally reasonable. While it is always possible for a district judge to have recited the defendant's arguments in more detail, this is not a case in which "we are unable to answer the simple question of why the district judge decided

6

to impose" the sentence that he did. *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010). Nor is this a case in which "[t]he district judge . . . did not make even a cursory mention" of the disputed issues. *Id.* at 804. Instead, "'the record makes clear that the sentencing judge listened to each argument.'" *Id.* (quoting *Rita*, 551 U.S. at 358).

Tincher's final objection to the procedural reasonableness of his sentence is that public safety is not a legitimate basis for imposing long sentences for drug crimes. According to Tincher, drug crimes are victimless and incarceration for drug offenses has not lowered the rates of violent crime. The district court, however, seems to have used the phrase "public safety" to refer to 18 U.S.C. § 3553(a)(2)(B–C). Those subsections explain "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct" and "to protect the public from further crimes of the defendant." Regardless of Tincher's views about the merits of federal drug policy, Tincher's actions were criminal. Tincher's sentence functions as a deterrent to the commission of drug crimes. His incapacitation protects the public from Tincher's drug sales for the duration of his incarceration. Moreover, two of the crimes to which Tincher pleaded guilty were firearms offenses, not drug offenses. The district court, then, did not procedurally err by considering "public safety."

Because the district court listened to each of Tincher's arguments and explained why each factor affected or did not affect Tincher's sentence, Tincher's sentence is procedurally reasonable.

**B.  Substantive Reasonableness**

For similar reasons, we conclude that Tincher's sentence is substantively reasonable. "A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the

sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Lapsins*, 570 F.3d 758, 772 (6th Cir. 2009) (internal quotation marks omitted). Our circuit presumes, subject to rebuttal, that a sentence is substantively reasonable when it falls within the Guidelines range. *Vonner*, 516 F.3d at 389–90. As explained above, the factors that the district court considered were permissible, and the district court did not fail to consider any relevant sentencing factors. That the district court found public safety to be the predominant concern is not proof that the district court gave public safety *unreasonable* weight, nor is it proof that the district court ignored the defendant's personal history. Tincher has not overcome the presumption that his within-Guidelines sentence is substantively reasonable.

### III. CONCLUSION

The district court did not abuse its discretion when it imposed a within-Guidelines sentence on Tincher. Because we have determined that Tincher's sentence is both procedurally and substantively reasonable, we **AFFIRM** Tincher's sentence.