NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0288n.06

No. 13-6000

FILED
Apr 17, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

CHAVIS DOUGLAS,

     Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

BEFORE:    MERRITT, MOORE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Chavis Douglas appeals from the district court's 151-month sentence following Defendant's guilty plea to two counts of possessing marijuana and cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

### I. THREE ENCOUNTERS WITH THE NASHVILLE POLICE

On November 23, 2009, Officer Barry Demonbreun of the Nashville Metropolitan Police Department visited a home on the east side of Nashville regarding a child abuse investigation. The house belonged to Defendant's girlfriend, but it was Defendant who answered the door. Demonbreun could detect a strong smell of marijuana from the house and asked Defendant about

it. Defendant admitted that he had smoked marijuana, but denied having any more drugs on the premises. He then voluntarily allowed Demonbreun to search the house—even telling Demonbreun where to focus his efforts. Despite Defendant's earlier representation, Demonbreun ended up finding five handguns (two of which had been reported stolen); 3.7 ounces of marijuana; one ounce of cocaine; and approximately $11,000 in cash. Once Demonbreun had completed his search, he called Detective Joel Goodwin of the vice division. After talking with Goodwin, Defendant volunteered to act as an informant for the Nashville police.

Defendant's career as a police informant was brief. He wore a wire once in January 2010, and met with someone the Nashville police suspected of being a drug dealer. No sale took place, and Goodwin suspected that Defendant had not even arranged a transaction prior to the meeting. Several hours later, Goodwin was contacted by another Nashville police officer who had just spotted Defendant and suspected he was about to engage in a drug transaction. Goodwin instructed the officer to follow Defendant's car. The officer pulled Defendant over a short time later after observing Defendant speeding and changing lanes rapidly. Defendant initially complied with the officer, but then attempted to flee on foot. While Defendant ran through a nearby field, officers saw him take a plastic bag out of his waistband and throw it away. That bag contained 44.9 grams of cocaine. Officers reapprehended Defendant and found $1500 in cash on his person. Once Goodwin arrived at the scene, Defendant told him that more drugs and guns could be found at Defendant's nearby office. Goodwin and Defendant drove to the office, where Goodwin recovered two handguns, a box of ammunition, $11,000 in cash, 3.1 grams of cocaine, and digital scales and empty bags, all covered in white residue. Despite finding this contraband, Goodwin decided to give Defendant more time to assist the police.

Goodwin's patience ran out on February 3, 2010. On that date, Office Demonbreun stopped a car for running a stop sign. Defendant was behind the wheel and recognized Demonbreun from the search in November 2009. Also familiar from November was the overwhelming smell of marijuana coming from the car. Demonbreun asked if Defendant had marijuana in the vehicle, and Defendant produced a small baggy from his trousers. Defendant also indicated that there was more marijuana hidden in the car—almost 2.5 kilograms. Demonbreun called Goodwin to ask what to do with Defendant; Goodwin was no longer willing to tolerate Defendant's law-breaking. Defendant was arrested and charged by the state authorities with possession with intent to sell less than ten pounds of marijuana.

## II. PROSECUTION AND SENTENCING

While Defendant was in state custody, he was indicted in the U.S. District Court for the Middle District of Tennessee on three counts: possession of marijuana with the intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); possession of cocaine with the intent to distribute, also in violation of § 841(a)(1); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Defendant pleaded guilty to all three counts.

In completing the presentence investigation report for Defendant, the probation office designated him a career offender pursuant to U.S.S.G. § 4B1.1. To qualify for this enhancement, a defendant must have been convicted of two prior felonies that are crimes of violence or controlled substance offenses, among other things. Defendant has an extensive criminal history, but the probation office specified only two prior Tennessee convictions as controlled substance offenses. One of these convictions—from October 2001—was described in the PSR as "Possession of Less Than 0.5 Grams of Cocaine for Resale." This description does not track to the language of any Tennessee criminal statute and the PSR did not specify which statute

Defendant had violated. Nonetheless, applying the career offender Guideline (and after other adjustments), the probation office calculated Defendant's advisory Guidelines sentencing range as 151–188 months.

Defendant asked the district court to vary downward based on his purported substantial assistance to the Nashville police. To support this argument, Defendant called Demonbreun and Goodwin to testify at his sentencing hearing. Defendant also requested a departure and a variance on the basis that his criminal history did not fall in the heartland of the career offender Guideline. Defendant further requested that the district court make his federal sentence run concurrently to the lengthy state sentence Defendant was already serving arising out of the search of his girlfriend's house in November 2009.

At sentencing, the district court acknowledged Defendant's various arguments, but ultimately determined that a within-Guidelines sentence was appropriate. The court believed that Defendant's extensive criminal history made him a true career offender, not just one in name only. The court also found that the crimes of conviction, which involved drugs and guns, were serious and dangerous. Even though the court recognized it had the authority to vary or depart from the Guidelines, the court did not think it appropriate under the facts of this case. The court imposed a sentence of 151 months, which will begin on the earlier of September 8, 2017 (when Defendant is eligible for parole in his state sentence) or when he is released from state custody. After the district court posed the *Bostic* question and Defendant did not object, the sentencing proceeding adjourned. This appeal timely followed.

**DISCUSSION**

Defendant raises three issues on appeal concerning the district court's sentence.[1] Specifically, Defendant asserts that: (1) the district court committed procedural and substantive error concerning Defendant's request for a variance for substantial assistance; (2) the district court erred in designating Defendant a career offender; and (3) the district court erred by declining to depart or vary from the Guidelines.

We review a district court's sentence for procedural and substantive reasonableness for abuse of discretion. *See Gall v. United States*, 552 U.S. 38, 51 (2007). This general rule is modified, however, when the district court asks a *Bostic* question. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). "[R]egardless of how counsel [] answers the *Bostic* question," we review procedural and substantive claims made prior to sentencing for reasonableness. *United States v. Simmons*, 587 F.3d 348, 354 (6th Cir. 2009). But if the district court commits procedural error during sentencing—by failing to address a defendant's arguments, for example—and if the defendant does not object following the *Bostic* question, we review for plain error. *See id.* "Under the plain error standard of review, the defendant must show (1) there is error; (2) the error was clear or obvious rather than subject to reasonable dispute; (3) it affected the defendant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) it seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011) (quotation marks omitted). Applying the appropriate standard of review, we address each of Defendant's arguments in turn.

---

[1]Defendant also argues that the Supreme Court's recent decision in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), means that the facts supporting the career offender Guideline needed to have been included in the indictment and submitted to a jury. We have already rejected this reading of *Alleyne*. *See United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014).

**I.** **DEFENDANT'S REQUEST FOR A VARIANCE BASED ON SUBSTANTIAL ASSISTANCE**

First, Defendant argues that the district court committed procedural error by failing to respond to his request for a variance based on substantial assistance. Defendant also argues that this failure constituted substantive error. Defendant has preserved the latter issue, but since he failed to object to the district court's purported procedural error, plain error review applies.

Defendant's procedural argument rests on the district court's purported failure to adequately address Defendant's variance request. Under 18 U.S.C. § 3553(c), the sentencing judge must state "the reasons for its imposition of the particular sentence." "The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. . . . The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). "The question in each case is whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009) (quotation marks and alteration omitted). We have allowed sentences to stand if the district court fails to respond to an argument that "lacks any factual basis or legal merit," or an argument that "presents issues that are 'conceptually straightforward.'" *Simmons*, 587 F.3d at 361 (quoting *United States v. Vonner*, 516 F.3d 382, 388 (6th Cir. 2008) (en banc)). By contrast, "[w]hen, on appeal, a defendant's argument and supporting evidence presents an arguably meritorious claim for a lesser sentence, but there is little to suggest that the district court actually considered it, then remand may be appropriate." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006); *see also United States v. Wallace*, 597 F.3d 794, 805, 807 (6th Cir. 2010).

In the case before us, the district court did not explicitly address Defendant's substantial assistance argument. Nevertheless, we hold that the court did not commit plain error. The court expressly noted that Defendant had argued for a variance based on substantial assistance. *Contra Wallace*, 597 F.3d at 806; *Gapinski*, 561 F.3d at 475–78; *United States v. Thomas*, 498 F.3d 336, 340–41 (6th Cir. 2007). The court discussed the § 3553(a) factors in detail and at some length. *Contra Wallace*, 597 F.3d at 802; *Thomas*, 498 F.3d at 340–41. And the court explained why it imposed the sentence it did—even if the court did not explain why it had rejected the substantial assistance argument. *See United States v. Duane*, 533 F.3d 441, 453 (6th Cir. 2008); *contra United States v. Johnson*, 488 F.3d 690, 700 (6th Cir. 2007). "[T]he judge might have said more," *Rita*, 551 U.S. at 359, but the full sentencing transcript makes clear that the court "listened to [Defendant's] argument for a lower sentence based upon substantial assistance, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *Gapinski*, 561 F.3d at 477 (quotation marks omitted); *see also United States v. Gunter*, 620 F.3d 642, 647 (6th Cir. 2010); *United States v. Petrus*, 588 F.3d 347, 356 (6th Cir. 2009); *Simmons*, 587 F.3d at 363; *United States v. Lapsins*, 570 F.3d 758, 774 (6th Cir. 2009); *United States v. Madden*, 515 F.3d 601, 611–12 (6th Cir. 2008).

We further hold that the district court's refusal to vary downward was substantively reasonable. "Review for substantive reasonableness focuses on whether a sentence is adequate, but not greater than necessary to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a). A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (quotation marks and citation omitted). A sentence that falls within a

defendant's Guidelines range is accorded a presumption of reasonableness. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 582 (6th Cir. 2009). Defendant's assistance to the government consisted of wearing a wire on a single occasion that ended in failure—even if Defendant placed himself in danger in the attempt. Defendant did direct law enforcement to his own drugs and guns, but he got credit for his contrition in the form of an acceptance-of-responsibility reduction. The court did not select its sentence arbitrarily and discussed all the relevant § 3553(a) factors. In sum, Defendant has not overcome the presumption of reasonableness that attaches to his within-Guidelines sentence. *See Madden*, 515 F.3d at 613.

## II. CAREER OFFENDER DESIGNATION

Defendant next asserts that the district court erred by designating him a career offender under U.S.S.G. § 4B1.1. The career offender Guideline applies if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is . . . a controlled substance offense; and (3) the defendant has at least two prior felony convictions of . . . a controlled substance offense." U.S.S.G. § 4B1.1(a). The first two elements have been satisfied in this case—the only question is whether Defendant has been convicted of two prior controlled substance offenses. According to Defendant, his October 2001 conviction for "Possession of Less Than 0.5 Grams of Cocaine for Resale" was not a controlled substance offense and the district court erred in ruling as much. All of this, Defendant argues, should be reviewed *de novo*. However, we hold that plain error review applies, and the district court did not plainly err in designating Defendant a career offender.

The parties hotly contest the proper standard of review. Under normal circumstances, we review the district court's legal conclusion that a defendant's conviction qualifies for career-

offender status *de novo*, even if the defendant posed no objection below. *See United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009). However, we apply plain error review if the defendant failed to object below and the government requests the more stringent standard of review on appeal. *See United States v. Rodriguez*, 664 F.3d 1032, 1035 (6th Cir. 2011); *see also United States v. Woodruff*, 735 F.3d 445, 448 (6th Cir. 2013). Defendant contends that he did object below to the application of the career offender Guideline, and points to this passage from his sentencing memorandum:

> Defendant objects to the designation of his [October] 2001 drug offense as a predicate offense for career offender status. He acknowledges however, that under the current "categorical approach" the Court will treat the offense as a "controlled substance offense" pursuant to 4B1.1. For the purposes of the departure and variance arguments made below, it bears emphasis that, had the offense been treated as simple possession, the Defendant's total offense level would be reduced to 21, making his sentencing range 77–96 months.

(R. 76, Def.'s Sentencing Mem. at 136 (citation omitted).) This quotation does not mean what Defendant claims. Defendant is either requesting a variance or placing an objection on the record should the law surrounding the career offender Guideline change. Even if this passage could be construed as an objection to the calculation of the Guidelines, Defendant removed all doubt during the sentencing hearing. Again and again, Defendant professed that he was not challenging the Guidelines calculation, which included the career offender designation. (R. 92, Sentencing Tr., at 276, 280, 320, 349.) Because Defendant did not object to the application of the career offender Guideline and because the government has requested plain error review, we review this issue under that standard.

The Guidelines define a controlled substance offense as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to

manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). We employ the "categorical approach" to determine if a conviction constitutes a controlled substance offense. *See United States v. Evans*, 699 F.3d 858, 862 (6th Cir. 2012). "Under this categorical approach, the court must look only to the fact of conviction and the statutory definition—not the facts underlying the offense—to determine whether that definition supports a conclusion that the conviction was for a" controlled substance offense. *Wynn*, 579 F.3d at 571 (quotation marks and emphasis omitted). However, if the statute of conviction encompasses conduct that would constitute a controlled substance offense, plus conduct that would not, we employ a "modified categorical approach." *See id.* Under the modified categorical approach, the district court may look to the facts contained in certain judicial records concerning the earlier prosecution to determine if § 4B1.1 applies. *See Shepard v. United States*, 544 U.S. 13, 26 (2005).

The issue before us is whether Defendant's October 2001 conviction constitutes a controlled substance offence. The PSR, however, did not identify the Tennessee statute that Defendant violated, either by description or citation. Defendant concedes that the offense must have been one of two Tennessee crimes: simple possession, in violation of Tenn. Code § 39-17-418, or possession with intent to "manufacture, deliver or sell," in violation of Tenn. Code § 39-17-417. Simple possession is not a controlled substance offense under the categorical approach. *See United States v. Montanez*, 442 F.3d 485, 488 (6th Cir. 2006); *see also United States v. Ryan*, 407 F. App'x 30, 31–32 (6th Cir. 2011) (per curiam). On the other hand, we have always treated a violation of § 39-17-417 as a categorical controlled substance offense. *See Ryan*, 407 F. App'x at 31–32; *James v. United States*, 217 F. App'x 431, 439 (6th Cir. 2007); *United States v. Hughley*, 192 F. App'x 447, 455 (6th Cir. 2006); *United States v. Holloway*, 142 F.3d 437, at *1–2 (6th Cir. 1998) (per curiam) (unpublished). Defendant argues that we have it wrong, pointing

out that § 39-17-417 proscribes possession with intent to "manufacture, deliver or sell"—terms that do not appear in the Guidelines' definition of "controlled substance offense." Defendant reads too much into these lexical differences. Our inquiry is not whether the elements of the crime contain the same words as the Guidelines' definition—it is "whether the elements of the offense are of the *type* that would justify its inclusion within the definition of a controlled-substance offense." *Woodruff*, 735 F.3d at 449 (emphasis added, quotation marks omitted). There is no meaningful distinction between possessing narcotics with intent to "manufacture, deliver or sell," and possessing them with intent to "manufacture, import, export, distribute, or dispense." Section 39-17-417 is a categorical controlled substance offense.

With the predicate questions resolved, we can finally turn to the actions of the district court. At sentencing, the district court had before it a PSR stating that Defendant had violated one of two crimes—one a categorical controlled substance offense and one not. If Defendant had objected, the district court could not have decided which statute Defendant had violated based on the PSR's vague description of the offense. *Cf. Wynn*, 579 F.3d at 576–77 (holding that a district court cannot use the PSR's factual statements when applying the modified categorical approach). Defendant, however, did not object. In fact, Defendant repeatedly told the district court he was not challenging his Guidelines calculation. Under these circumstances, the district court's implicit finding that Defendant had violated § 39-17-417 rather than § 39-17-418 was not "obvious or clear" error, let alone an error "so plain that the trial judge was derelict in countenancing it."[2] *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quotation marks and alterations omitted).

---

[2]The concurrence takes the position that Defendant has not attempted to establish the final two elements of plain error; therefore, any miscalculation of the career offender Guideline would be a wrong without a remedy. The career offender Guideline has been designed to

**III.**   **DEPARTURE OR VARIANCE FROM THE CAREER OFFENDER GUIDELINE**

Finally, Defendant argues that the district court failed to consider Defendant's policy arguments when it declined to depart or vary from the career offender Guideline. Even if a defendant is properly categorized as a career offender under U.S.S.G. § 4B1.1, a district court has the power to downwardly depart or vary from the Guidelines range. A downward departure is authorized "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(b)(1). The court can also vary downward "based on a rejection of the policy underlying the career offender Guidelines." *United States v. Gillis*, 592 F.3d 696, 698 (6th Cir. 2009).

However, "we have no jurisdiction to review a decision of a district court not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Bazazpour*, 690 F.3d 796, 804 (6th Cir. 2012) (quotation marks omitted). "We do not require that a district court explicitly state that it is aware of its discretion to make such a departure. Rather, we presume that the district court understood its discretion, absent clear evidence to the contrary." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) (citations omitted). The same holds true of a request for a

dramatically increase a defendant's offense level and criminal history category, and thereby increase substantially the recommended sentencing range. In recognition of this fact, some courts have recognized that any error that results in designating a defendant a career offender is plain error. *See United States v. Knight*, 266 F.3d 203, 206-07 (3d Cir. 2001); *see also United States v. Johnson*, 103 F. App'x 866, 874 (6th Cir. 2004), *vacated and remanded following* Booker, 543 U.S. 1108 (2005); *United States v. Warren*, 361 F.3d 1055, 1059 (8th Cir. 2004). The instant case is no different. If Defendant had not qualified as a career offender, his advisory Guidelines sentencing range would have been 77–96 months. With the career offender Guideline, the recommended range was 151–188 months.

variance. *See United States v. Richardson*, 352 F. App'x 47, 54 (6th Cir. 2009). In this case, the district court knew it could have varied or departed from the Guidelines range—it simply chose not to. Defendant parses the sentencing transcript to argue that the district court was unaware of its power, but he cannot point to "clear evidence" that the district court did know it had such discretion. *Santillana*, 540 F.3d at 431.

## CONCLUSION

For the reasons set forth above, the sentence of the district court is **AFFIRMED** in full.

**KAREN NELSON MOORE, concurring in part and concurring in the judgment**. I write separately on the issue of Douglas's designation as a career offender. I agree with the majority that Douglas failed to object to the application of the career-offender guideline. When a defendant does not object to the determination that a prior conviction qualifies as a predicate offense under the career-offender guideline, and the government does not urge plain-error review, we review the issue de novo. *United States v. Rodriguez*, 664 F.3d 1032, 1035 (6th Cir. 2011); *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009). Here, however, the government argued that Douglas did not object to the guidelines calculation and urged the court to apply plain-error review. Appellee Br. at 26–28. Accordingly, plain-error review applies.

In the district court, the government has the burden to prove that a prior conviction is a predicate offense for the career-offender guideline. *United States v. Anglin*, 601 F.3d 523, 530 (6th Cir. 2010). But in this court when we review for plain error, "the burden of establishing entitlement to relief for plain error is on the defendant claiming it." *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). Douglas presents no argument on the final two steps of plain-error review: that any error by the district court "affected the defendant's substantial rights" and "seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011). "[T]he phrase 'affect substantial rights' is generally synonymous with 'prejudicial,' which '*usually* means that the error must have affected the outcome of the district court proceedings.'" *United States v. Barnett*, 398 F.3d 516, 526 (6th Cir. 2005) (quoting *United States v. Cotton*, 535 U.S. 625, 632 (2002)). However, there are "'errors that should be *presumed prejudicial* if the defendant cannot make a specific showing of prejudice.'" *United States v. Segines*, 17 F.3d 847, 852 (6th Cir. 1994) (quoting *United States v. Olano*, 507 U.S. 725, 735 (1993)).

Here, Douglas is capable of "mak[ing] a specific showing of prejudice," *id.*, and so prejudice is not presumed. Douglas could show that he was prejudiced by application of the career-offender enhancement by stating the Tennessee statute under which he was convicted. If a conviction under that statute does not qualify as a controlled-substance offense, then he would have demonstrated prejudice from the improper application of the career-offender enhancement. But Douglas does not make this, or any other, argument that he satisfies the third prong of plain-error review. Nor does he present any argument that application of the career-offender enhancement "seriously affected the fairness, integrity or public reputation of judicial proceedings." *Massey*, 663 F.3d at 856. Because Douglas has not met his burden of showing that he is entitled to relief, I would affirm the sentence of the district court.