NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 15a0074n.06

Case No. 14-1389

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jan 26, 2015*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| ROGELIO RUIZ, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

_____

**BEFORE:** **SUHRHEINRICH and GRIFFIN, Circuit Judges; and LEITMAN, District Judge.\***

**LEITMAN, District Judge.** In November 2013, Defendant-Appellant Rogelio Ruiz ("Ruiz") pleaded guilty to possession with intent to distribute cocaine and cocaine base. The district court sentenced Ruiz to 188 months of imprisonment. Ruiz argues that this sentence was both procedurally and substantively unreasonable. We affirm.

## I. Background

In the Fall of 2012, Ruiz's friend, Gilbert Albarez ("Albarez"), offered to pay Ruiz approximately $500 to use Ruiz's vehicle to pick up drugs in Columbus, Ohio and transport them to Lansing, Michigan. Ruiz agreed to accompany Albarez on the trip – riding as a passenger in his own vehicle. Ruiz knew that the purpose of the trip was to pick up and transport drugs, but

_____

*The Honorable Matthew F. Leitman, United States District Judge for the Eastern District of Michigan, sitting by designation.

Ruiz was not certain as to the precise type of drugs that they would be transporting. Ruiz further understood that the drugs would be distributed upon the pair's arrival in Lansing.

As Ruiz and Albarez transported the drugs from Columbus to Lansing, a deputy from the Ingham County Sheriff's Department stopped Ruiz's vehicle. During the stop, the deputy discovered two rectangular packages wrapped in duct tape behind the driver's seat and a third package wrapped in green cellophane on the back seat. Laboratory tests later confirmed that the packages contained 2.66 kilograms of cocaine and 131.77 grams of cocaine base.

Ruiz was charged in a single-count indictment with knowingly and intentionally possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)-(iii). Ruiz pleaded guilty to the charge without a written plea agreement, and the district court accepted his guilty plea.

In preparation for sentencing, the United States Probation Office (the "Probation Office") prepared a Presentence Investigation Report ("PIR"). The PIR listed numerous prior criminal convictions, including a 1994 conviction for felony assault with a dangerous weapon (the "1994 Felony") and a 1996 felony drug conviction (the "1996 Felony"). Based on the 1994 Felony and the 1996 Felony, the Probation Office concluded that Ruiz was a career offender as defined in U.S.S.G. § 4B1.1.[1] As a career offender who had pleaded guilty to an offense carrying a statutory maximum sentence of 40 years, Ruiz's offense level was 34. *See* U.S.S.G. § 4B1.1(b)(2). That level was subsequently reduced by three for Ruiz's acceptance of

---

[1] A defendant is a career offender if "(1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a).

responsibility and timely notification of his intent to plead guilty. Accordingly, Ruiz's total offense level was 31, resulting in a guideline sentencing range of 188 to 235 months.

Ruiz filed three separate submissions concerning his sentence with the district court: (1) Objections to Scoring of the Sentencing Guidelines and Motion for Departure (the "Guidelines Submission"); (2) a Motion for Variance; and (3) a Sentencing Memorandum. In the Guidelines Submission, Ruiz *agreed* with the PIR that, despite the ages of the 1994 Felony and the 1996 Felony, the district court could consider *both* of them in determining whether he qualified as a career offender. In Ruiz's words: "It is not contested that these convictions are properly scored under the guidelines because the revocation provisions bring them within the applicable 15-year time period."[2] Ruiz further acknowledged that "counting these convictions results in career offender treatment." Instead of challenging his career offender status, Ruiz moved for a downward departure under U.S.S.G. § 4A1.3(b)(1) on the ground that scoring him as a career offender overstated his criminal history. Ruiz contended that given the ages of the 1994 Felony and the 1996 Felony, they did "not serve as useful predictors of the need for punishment…."

In the Motion for Variance, Ruiz argued that the court should impose a below-guidelines sentence based upon the factors set forth in 18 U.S.C. § 3553(a). Ruiz said that such a

---

[2]The "revocation provision" referenced by Ruiz is presumably U.S.S.G. § 4A1.2(k)(2). That section provides that the "[r]evocation of probation, parole, supervised release, special parole, or mandatory release may affect the time period under which certain sentences are counted" for purposes of career offender scoring. As relevant here, Ruiz committed the 1996 Felony while he was on parole for the 1994 Felony; Ruiz's parole for the 1994 Felony was revoked after Ruiz committed the 1996 Felony; and Ruiz was subsequently incarcerated. When Ruiz agreed in his Guidelines Submission that the 1994 Felony was properly scored as a career offender predicate under the "revocation provision," he conceded that as a result of the revocation of his parole for the 1994 Felony and his subsequent incarceration, he was incarcerated for the 1994 Felony within the 15-year time period that is considered for career offender scoring.

downward variance was warranted based upon, among other things, his minimal participation in the charged offense and the need to avoid a sentencing disparity with Albarez, who pleaded guilty to the same charge as Ruiz and was sentenced to 84 months imprisonment.

On March 27, 2014, the district court held a sentencing hearing. Ruiz first contended, as he did in his Guidelines Submission, that the court should depart downward from the guidelines range because scoring him as a career offender overstated his criminal history. The district court then asked Ruiz whether the "career criminal statute" contains a limitation on the age of predicate convictions that qualify for career offender scoring. Ruiz's counsel responded that although the "career criminal statute" does not limit the age of predicate convictions, "the Court does have some discretion if the Court believes that utilizing the career offender enhancement would overstate … the defendant's criminal history."

In its argument, the government reminded the court that although the "career offender statute does not have a time limit for prior convictions," the career offender provision of the guidelines does have a "time limit" for scoring "prior convictions." The government contended (as Ruiz had already agreed) that the 1994 Felony and the 1996 Felony "fall within that time limit and are properly scored" in the career offender determination. The government conceded that the district court had authority to impose a sentence below the guidelines range, but it urged the court not to do so.

Prior to imposing Ruiz's sentence, the district court recognized that it had authority to depart from the guidelines range that had been driven by Ruiz's career offender status and explained its decision not to do so:

> THE COURT: … Well, the Court looks at this finding that obviously we've got this career offender statute looking me right in the face here, and the Court goes back sometimes in looking at the career offender status. *There's some leeway, of*

> *course, in the guidelines to say, Well, what kind of life has Mr. Ruiz lived?* And starting in 1990, we have felony weapon; 1994, assault with a dangerous weapon. We have in 1996 a prison sentence as a result of controlled substance distribution. That's cocaine. And in '01 we have a misdemeanor, but it's child abuse, fourth degree. I don't often see those, those kind of offenses.
>
> Malicious destruction of property in '02. In '09, I have domestic abuse here in '09 with a probationary sentence, and by the way, that's a probationary sentence that was violated with 60 days in jail. And then I proceed on to 2010 where there's a felony weapons charge here on a .357 magnum rolled up in a coat, and again it's in the state court in Ithaca and it's a 365 jail, serve six months with six months suspended, the usual state. But then there's a probation violation and the remainder of the sentence is reinstated.
>
> What do I have here? What do I have here? Mr. Ruiz what kind of a life did you lead?
>
> DEFENDANT RUIZ: I made some bad decision, made mistakes.
>
> THE COURT: Oh, that's an understatement. You didn't learn from each one of them, did you? Nor did your family apparently whop you up the side of the head and say, Don't do it again … And all I see is a perfectly irresponsible person, and I might add somewhat dangerous….

(emphasis added).

In addition to rejecting Ruiz's request for a downward departure under the guidelines, the court denied his motion for a variance under 18 U.S.C. § 3553(a). The district court considered the sentencing factors in § 3553(a) and, based on those factors, declined to impose a below-guidelines sentence:

> [T]he nature and circumstances of this offense and your history and characteristics which speak in this case very strongly make this reflect on a serious offense here and a lack of – complete lack of respect for the laws of this country, and that's really a concern. I have to provide from this sentence an adequate deterrence to criminal conduct and really protect the public at the same time.

Despite denying Ruiz's requests for a departure and variance, the district court commended Ruiz for being "pretty forthright" at his plea and sentencing hearings. Accordingly, the court sentenced Ruiz at the lowest end of the guidelines range – 188 months imprisonment.

## II. Defendant-Appellant's Claims and Standard of Review

On appeal, Ruiz raises three challenges to his sentence. Specifically, Ruiz asserts that the district court erred by (1) sentencing Ruiz as a career offender; (2) failing to recognize its authority to depart or vary from the guidelines range based on the age of Ruiz's predicate convictions; and (3) ignoring certain sentencing factors while giving unreasonable weight to the guidelines range.

"Sentences in criminal cases are reviewed for procedural and substantive reasonableness." *United States v. Freeman*, 640 F.3d 180, 185 (6th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review substantive-reasonableness and preserved procedural-reasonableness claims for an abuse of discretion. *See id.* at 185-86.

## III. Analysis

### A. Career Offender Scoring

Ruiz argues that the district court erred by scoring him as a career offender under U.S.S.G. § 4B1.1. A defendant is considered a career offender under the guidelines if, *inter alia*, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). However, the guidelines impose time limitations on the felony convictions that may be considered in determining whether a defendant qualifies as a career offender. As relevant here, a prior felony conviction qualifies as a career offender predicate only if the sentence for that conviction (1) "was imposed within fifteen years of the defendant's commencement of the instant offense," or (2) "resulted in the defendant being

incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1); *see also United States v. Robertson*, 260 F.3d 500, 509 (6th Cir. 2001) (noting that the provisions of U.S.S.G. § 4A1.2 apply in determining whether a prior felony conviction qualifies as a career offender predicate) (citing U.S.S.G. §§ 4B1.1, cmt. n. 1; 4B1.2, cmt. n. 3).

Ruiz contends that the 1994 Felony did not qualify as a career offender predicate because his sentence was not imposed, and he did not serve any part of his prison sentence for that crime, within 15 years of the instant offense. Ruiz thus argues that the district court erred by counting the 1994 Felony as a career offender predicate. Ruiz acknowledges that he did not raise this argument in the district court, and he asks this Court to review for plain error. However, Ruiz's argument that he should not have been scored as a career offender based upon the age of the 1994 Felony is not subject to review – even for plain error – because Ruiz waived the argument.

"Waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quoting *United States v. Olano*, 507 U.S. 725, 732-33 (1993)). Waived claims "are not reviewable" on appeal. *Aparco-Centeno*, 280 F.3d at 1088. A criminal defendant waives a challenge to the application of a particular guideline where he expressly agrees that the guideline applies to him. *See id.* That is exactly what happened here.

As described in detail above, Ruiz agreed in his Guidelines Submission that the 1994 Felony could properly be counted as a career offender predicate under the guidelines. Ruiz even explained the basis for his agreement: "because the revocation provisions [of the guidelines] bring [the conviction] within the applicable 15-year time period." Having concurred in the PIR's conclusion that the 1994 Felony was a career offender predicate, Ruiz waived the argument that the court erred in considering that offense as a predicate conviction.

This court found a waiver under very similar circumstances in *Aparco-Centeno*, *supra*. In that case, the government charged the defendant, Aparco-Centeno, with re-entry of a deported alien under 8 U.S.C. § 1326. The government also sought a sentencing enhancement under 8 U.S.C. § 1326 based upon two prior convictions that allegedly qualified as aggravated felonies. In a sentencing memorandum and motion for downward departure, Aparco-Centeno said that "[b]ecause [his] sentences for two of these offences were at least one year in duration, they are classified as aggravated felonies…." *Id.* The district court sentenced Aparco-Centeno under the enhanced sentencing provision. On appeal, Aparco-Centeno argued that one of his predicate convictions did not qualify as an aggravated felony and that he therefore should not have received the sentencing enhancement. This court declined to review Aparco-Centeno's claim because the statement from his sentencing memorandum amounted to a waiver of the claim:

> [W]e agree with the court in *United States v. Sloman* that "[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." 909 F.2d 176, 182 (6th Cir. 1990). This is exactly the course that Aparco-Centeno followed in the court below, and thus waived his claim on this issue.

*Aparco-Centeno*, 280 F.3d at 1088. *See also United States v. Hall*, 373 F. App'x 588, 592 (6th Cir. 2010) (finding that defendant waived argument that he should not be sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e), where defense counsel said to district court: "I certainly understand that he's a, pursuant to statute, an armed career criminal").

Ruiz's statements to the district court concerning the scoring of the 1994 Felony cannot be distinguished in any material way from the statements by counsel in *Aparco-Centeno* that amounted to a waiver. Indeed, like the defendant in *Aparco-Centeno*, Ruiz did not merely remain silent and fail to object as the district court applied the relevant sentencing enhancement. Instead, Ruiz specifically discussed the treatment of the 1994 Felony as a career offender

predicate in his Guidelines Submission and expressly told the district court that he did not take issue with that treatment because it was consistent with the "revocation provisions" of the guidelines. Under these circumstances, Ruiz waived his argument that the 1994 Felony should not have been treated as a career offender predicate, and we will not review that challenge in this direct appeal.

That is not to say, however, that the 1994 Felony was properly treated as a career offender predicate. Ruiz's appellate counsel vigorously argues that under a straightforward application of Michigan sentencing law, Ruiz could not possibly have been serving any portion of his sentence for the 1994 Felony within 15 years of the instant offense and that the 1994 Felony thus should not have been considered as a career offender predicate. This well-developed argument raises a serious question as to whether Ruiz's trial counsel failed to provide effective assistance when he agreed that the 1994 Felony qualified as a career offender predicate. We express no opinion as to whether, as Ruiz's appellate counsel contends, Ruiz was properly sentenced as a career offender, nor as to whether trial counsel failed to provide effective assistance. We note only that issues relating to counsel's performance are properly raised in a motion under 28 U.S.C. § 2255 and considered in the first instance by the district court. *See, e.g.*, *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990).

### B. Downward Departure and/or Variance Based on Age of Prior Convictions

Ruiz argues that even if the district court properly classified him as a career offender, the court committed procedural error by failing to recognize its authority to depart and/or vary from

the guidelines range based on the age of Ruiz's predicate convictions.[3]  According to Ruiz, the district court recognized that it had "leeway *within* the guidelines" range to account for the age of Ruiz's prior convictions, but the court failed to acknowledge that it could depart and/or vary "*below*" the guidelines range based on the age of his convictions.  We disagree.  Ruiz has not established that the district court failed to recognize its authority to impose a below-guidelines sentence based upon the age of the prior convictions.

"We do not require that a district court explicitly state that it is aware of its discretion to make … a departure.  Rather, we presume that the district court understood its discretion, absent clear evidence to the contrary."  *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) (citations omitted).  The same standard applies for a variance.  *See United States v. Douglas*, 563 Fed. App'x 371, 379 (6th Cir. 2014).

Ruiz has failed to present clear evidence that the district court did not understand its discretion to depart or vary from the guidelines range.  Indeed, a straightforward reading of Ruiz's sentencing hearing indicates that the district court *did* recognize its authority to depart and/or vary and that it simply declined to do so.  The district court addressed and squarely rejected Ruiz's request for a departure or variance on the ground that the age of the prior convictions led to an overstatement of Ruiz's criminal history:

---

[3]In his briefs on appeal, Ruiz appears to use the terms "departure" and "variance" interchangeably.  Although a departure is distinct from a variance, *see United States v. Grams*, 566 F.3d 683, 686-87 (6th Cir. 2009) (per curiam) (explaining that a "departure" refers to "the imposition of a sentence outside of the advisory range or an assignment of criminal history category different than the otherwise applicable category made to effect a sentence outside the range," while a "variance" refers to "the selection of a sentence outside the advisory Guidelines range based upon the district court's weighing of one or more of the sentencing factors of § 3553(a)"), we interpret Ruiz's use of both terms to refer to a sentence below the guidelines range.

> As [Ruiz's counsel] says, some of [Ruiz's prior convictions] are old. If they were old and unrelated, that would be one thing. If it was a Ponzi scheme back then and now we're talking about something else, I would say, Yeah, it's kind of – but it isn't. It's guns and drugs run right through it and a little violence run right through it way back then. That's why I think it does count. It does mean something in the long run because there is a continuum here that I'm very concerned with stopping.

Thus, the district court acknowledged that it had authority to depart or vary – and that perhaps it would have departed or varied if Ruiz's prior convictions had been "old and unrelated." However, the district court decided not to exercise its authority because the court detected a pattern of gun, drug, and violent offenses.

Moreover, the district court acknowledged that "[t]here's some leeway, of course, in the guidelines to say, Well, what kind of life has Mr. Ruiz lived?" A fair reading of this statement suggests that the district court was referring to U.S.S.G. § 4A1.3(b), which permits a district court to depart below the guidelines range if "the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." Indeed, immediately after acknowledging its "leeway," the district court discussed Ruiz's criminal history in detail.

The sentencing hearing transcript simply does not support Ruiz's contention that the district court believed it had "leeway" to depart *within*, but not *below*, the guidelines range. Ruiz's interpretation is particularly untenable given that both Ruiz's counsel and the government told the district court at the sentencing hearing that it *did* have the authority to impose a below-guidelines sentence. Thus, the better reading of the transcript is that the district court understood its authority to depart or vary below the guidelines range and simply declined to do so.

Ruiz attempts to show that the district court misunderstood its authority to depart or vary by pointing to the colloquy at the sentencing hearing in which the district court (1) asked Ruiz's

counsel whether the "career criminal statute" authorizes courts to disregard old convictions, and (2) stated that "there is no length" for prior convictions under that statute. But Ruiz has not established that the district court's questions and statement about the "career criminal statute" are *clear evidence* that the district court misunderstood its authority to depart or vary from the guidelines range. When read in isolation, the district court's questions and ambiguous statement arguably provide some support for Ruiz's claim.[4] However, for the reasons explained above, the transcript of the full sentencing hearing convinces us that the district court recognized its authority to impose a below-guidelines sentence based upon the age of Ruiz's prior convictions. Ruiz simply has not rebutted the presumption that the district court understood its discretion to depart or vary based on the age of his prior convictions.

## C. Substantive Reasonableness

Finally, Ruiz contends that his sentence is substantively unreasonable because the district court "fail[ed] to consider pertinent § 3553(a) factors while giving an unreasonable amount of weight to the guidelines [range]." Again, we disagree.

Ruiz's within-guidelines sentence is presumptively reasonable. *See United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007). Ruiz may rebut this presumption by showing, *inter alia*, that the district court "fail[ed] to consider relevant sentencing factors" or "g[ave] an unreasonable amount of weight to any pertinent factor." *United States v. Cooper*, 739 F.3d 873,

---

[4]The "career criminal statute" to which the district court referred appears to be 28 U.S.C. § 994(h), which simply directs the U.S. Sentencing Commission to establish sentencing enhancements for career offenders. As discussed at Ruiz's sentencing hearing, §994(h) *does not* establish time limitations for convictions to count as career offender predicates. Instead, the career offender provisions in U.S.S.G. § 4A1.2 of the guidelines – promulgated pursuant to § 994(h) – establish time limitations for predicate offenses. Accordingly, while the district court's statement that "there is no length" for prior convictions under the "career criminal statute" was technically accurate, there *are* time limits for prior convictions under the career offender provisions of the guidelines.

883 (6th Cir. 2014). In an attempt to make this showing, Ruiz contends that the district court failed to consider (1) Ruiz's minor role in the instant offense, (2) the disparity between Ruiz's 188-month sentence and Albarez's 84-month sentence, and (3) the age and nature of Ruiz's predicate convictions. Ruiz also argues that the district court gave an unreasonable amount of weight to the guidelines range. We do not believe that Ruiz is entitled to relief on any of these grounds.

The district court reasonably rejected each of Ruiz's arguments for a downward variance. The district court specifically noted that Ruiz had raised "the minor participant issue," and the district court's statements reflect its obvious conclusion that Ruiz was *not* a minor participant in the charged offense. In fact, the district court's statements indicate that it viewed Ruiz's participation as important because Ruiz had "provid[ed] [his] car and [his] accompaniment" in order to transport the drugs from Columbus to Lansing. Further, the district court reasonably distinguished Ruiz from Albarez because Ruiz had a lengthy criminal history that evidenced his "inability to conform" to "basic rules of living in our community." Indeed, Ruiz had thirteen criminal history points, while Albarez had only three, and Ruiz was scored as a career offender, while Albarez was not. Likewise, Albarez cooperated extensively with the government, the government filed a motion for downward departure based on his substantial assistance, and the court granted the motion.[5] That did not happen in Ruiz's case. Given these substantial differences between Ruiz and Albarez, the district court's decision to impose a much longer sentence on Ruiz was not unreasonable. Moreover, as discussed above, the district court

---

[5]The information above concerning Albarez's criminal history points and substantial assistance comes from the government's sentencing memorandum in this case. There is no indication that Ruiz ever objected to the government's recitation of these facts, and he does not take issue with them in this appeal.

expressly considered the age and nature of Ruiz's prior convictions and determined that he was not entitled to a downward departure or variance on that basis. In sum, Ruiz has not demonstrated that the district court unreasonably rejected any of his proffered grounds for a below-guidelines sentence.

Finally, Ruiz has not pointed to anything in the record indicating that the district court gave the guidelines unreasonable weight. In fact, the record reflects that the district court considered the guidelines range in conjunction with the other § 3553(a) sentencing factors. Indeed, the district court specifically addressed the nature and characteristics of the offense; Ruiz's history and character; the need to provide adequate deterrence; and the need to protect the public. Simply put, Ruiz has failed to rebut the presumption that his within-guidelines sentence is substantively reasonable.

## IV.    Conclusion

For all of the reasons discussed above, we AFFIRM the district court's judgment of sentence.